Docket Nos. 87574, 87725, 87726, 87752 cons.–Agenda 8 –May 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GREGORY MADEJ, Appellant (Consul General for the Republic

 of Poland in Chicago, Appellant).

Opinion filed August 10, 2000.

JUSTICE RATHJE delivered the opinion of the court:

Defendant, Gregory Madej, appeals from the decision of the circuit court of Cook County denying his petition for relief from judgment (see 735 ILCS 5/2–1401 (West 1998)) and denying his petition for writ of 
mandamus
 (see 735 ILCS 5/14–101 
et seq. 
(West 1998)). Intervenor, Consul General for the Republic of Poland in Chicago, also appeals from the dismissal of the petition for writ of 
mandamus
. Moreover, the Consul General appeals the trial court’s denial of the Consul General’s motion to intervene in the section 2–1401 proceeding.

BACKGROUND

Original Criminal Proceedings

This case began in 1981 when the police arrested defendant after he led them on a car chase through Chicago. When the officers arrested defendant, his hands and head had blood on them, and his shirt, pants, and undershorts were heavily stained with blood. Defendant also had deep scratches on his face and scratches on his chest, arms, and back.

Shortly thereafter, Barbara Doyle, the owner of the car in which defendant fled from the police, was found in an alley on the northwest side of Chicago. Doyle was naked and had died from multiple stab wounds. Her missing clothes were found in the car defendant was driving.

After defendant was arrested, he told the police that a friend named Hojamoto was driving the victim’s car. Defendant rode around with Hojamoto, who jumped from the car a block before the police overtook the car. At trial, defendant testified that he was in the car with the victim and twice had consensual sex with her. He explained that the victim pulled a knife during an argument over drugs. They struggled, and the victim began bleeding. He then threw her from the car and left the scene.

Defendant was convicted of murder, armed robbery, rape, and deviate sexual assault and sentenced to death. This court affirmed defendant’s conviction and sentence. 
People v. Madej
, 106 Ill. 2d 201 (1985). Thereafter, defendant filed a post-conviction petition and amended it in 1993. The trial court dismissed defendant’s petition, and this court affirmed that dismissal. 
People v. Madej
, 177 Ill. 2d 116 (1997). Subsequently, defendant sought leave from this court to file a petition for writ of 
mandamus
. This court denied that motion.

Current Proceedings

In July 1998, defendant filed the current action. Defendant filed his section 2–1401 petition in the criminal division. Because of local court rules, defendant filed his petition for writ of 
mandamus
 in the chancery division.

Defendant’s section 2–1401 petition alleged that his rights under the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, and the Consular Convention of 1972 between Poland and the United States,
(footnote: 1) May 31, 1972, 24 U.S.T. 1231, were violated when the police failed to inform defendant that, as a Polish citizen, he had a right to contact a consular official from Poland. Defendant also alleged that, after he was arrested, the United States had a duty to notify the Polish consular that a Polish national had been arrested and detained.
(footnote: 2) Defendant’s 
mandamus
 petition alleged that he was entitled to relief because his conviction and sentence are void under international law.

In December, the Consul General sought leave to intervene in both actions. Judge Albert Green, who was presiding over the 
mandamus
 proceedings, granted the Consul General’s petition. Thereafter, Judge Green transferred the 
mandamus
 proceedings to Judge Thomas Fitzgerald, who was presiding over the section 2–1401 proceedings. Thereafter Judge Fitzgerald denied the Consul General’s motion to intervene in the section 2–1401 proceeding. Subsequently, Judge Fitzgerald denied both petitions. Defendant and the Consul General now appeal.

While this appeal was pending, this court granted leave to the United Mexican States, the Human Rights Committee of the Bar of England and Wales, and the Consulate General of the Federal Republic of Germany in Chicago to file briefs as 
amici curiae
.

ANALYSIS

Section 2–1401 Proceeding

Section 2–1401 of the Code of Civil Procedure provides a method for obtaining relief from a judgment after more than 30 days have passed. See 735 ILCS 5/2–1401(a) (West 1998). A section 2–1401 petition must be filed “not later than 2 years after the entry of the order or judgment.” 735 ILCS 5/2–1401(c) (West 1998). Relief sought more than two years after the entry of judgment will not be considered absent a showing that the petitioner was under duress, or a legal disability, or that the grounds for relief were fraudulently concealed. 
People v. Caballero
, 179 Ill. 2d 205, 211 (1997).

Here, judgment was entered in 1982. Defendant filed his petition in 1998, approximately 14 years after the limitation period expired. Defendant and the Consul General acknowledge that the petition is untimely, but argue that this court can consider the merits of the petition because (1) under international law defendant’s conviction and sentence are void; (2) the Consul General was never told of the treaty violation and thus could not preserve its rights sooner; (3) the State fraudulently concealed from defendant his rights under the Vienna Convention; and (4) the reliance on a state procedural rule to bar an action violates international law.

Voidness

Defendant contends that the principle 
restitutio in integrum
, which is well established in international law, renders his conviction and sentence void. 
Restitutio in integrum
 is defined as:

“In the civil law, restoration or restitution to the previous condition. This was effected by the prætor
(footnote: 3) on equitable grounds, at the prayer of an injured party, by rescinding or annulling a contract or transaction valid by the strict law, or annulling a change in the legal condition produced by an omission, and restoring the parties to their previous situation or legal relations. The restoration of a cause to its first state, on petition of the party who was cast, in order to have a second hearing.” Black’s Law Dictionary 1313 (6th ed. 1990).

Although we acknowledge the important role that 
restitutio in integrum
 plays in international law, defendant has not cited any authority to support a conclusion that the principle renders defendant’s conviction and death sentence void. Instead, both the quotation from Black’s, upon which defendant relies, and the other authorities cited by defendant support the conclusion that 
restitutio in integrum
 is an equitable remedy for violations of a treaty. To say that the proper remedy for a treaty violation is to annul the act that caused the violation is a far cry from concluding that the remedy means that a court’s decision is void.

This court has explained that an order is void if it was entered by a court that lacked jurisdiction of the parties or of the subject matter or that lacked the inherent power to make or enter the particular order involved.
 R.W. Sawant & Co. v. Allied Programs Corp.
, 111 Ill. 2d 304, 309 (1986). Here, the trial court clearly had jurisdiction of the parties and of the subject matter and it had the inherent power to make or enter the orders involved. Consequently, we see no basis upon which to conclude that defendant’s conviction and sentence are void.

The Consul General’s Knowledge

The Consul General argues that the trial court erred in denying its motion to intervene in the section 2–1401 petition. It further argues that the limitation period does not apply to bar its claim because it “only recently became aware that the State of Illinois had tried and sentenced its national to death.” If we accept, without deciding, that the Consul General can intervene in the section 2–1401 petition (a proposition that the State vigorously disputes), we must conclude that the action would be time-barred.

Although a petitioner must demonstrate due diligence to obtain relief pursuant to section 2–1401 (
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 221 (1986)), a showing of due diligence does not obviate the need to file a section 2–1401 petition within the applicable limitation period. Our case law is clear:

“[T]he two-year limitation mandated by section 2–1401 and its predecessor, section 72 (Ill. Rev. Stat. 1975, ch. 110, par. 72), must be adhered to in the absence of a clear showing that the person seeking relief is under legal disability or duress or the grounds for relief are fraudulently concealed.” 
Caballero
, 179 Ill. 2d at 211.

Here, the Consul General does not allege that it was under duress or a legal disability or that the grounds for relief were fraudulently concealed. Consequently, we are unable to conclude that it is entitled to seek relief under section 2–1401 outside the limitation period simply because it did not discover the underlying facts until after the limitation period had expired.

Fraudulent Concealment

Defendant argues that the limitation period was tolled for him because the State fraudulently concealed from him the fact that the Vienna Convention gave him the right to consular assistance. Defendant argues that he has certain rights under the Vienna Convention and that the State had the duty to inform him of these rights. Defendant concludes that the State’s failure to inform him of these rights constitutes fraudulent concealment. We disagree.

To toll the limitation period, the alleged fraud must consist of “affirmative acts or representations designed to prevent discovery of the cause of action or ground for relief.” 
Crowell v. Bilandic
, 81 Ill. 2d 422, 428 (1980). Here, the fact that defendant was entitled to be informed of his rights under the Vienna Convention is a matter of international law. The rights that defendant asserts the State was obliged to inform him of are rights that are, by defendant’s own admission, contained in treaties that are public documents not only in this state, but also in countless countries around the world.

Even if we accept defendant’s contention that the State was obligated to inform defendant of these rights, we are unable to conclude that this failure can constitute fraud when the rights are a matter of public record. Consequently, we are unable to conclude that, by failing to inform defendant of his rights, the State fraudulently concealed defendant’s grounds for relief.

State Procedural Rule

Defendant also contends that the limitation period must be tolled because a state procedural rule cannot prevent defendant from seeking a remedy for a violation of international law. Defendant acknowledges that the Supreme Court has held that, to determine whether a state’s procedural rules govern, a court must look to the treaty’s text and drafting history. See 
Volkswagenwerk Aktiengesellschaft v. Schlunk
, 486 U.S. 694, 700, 100 L. Ed. 2d 722, 731, 108 S. Ct. 2104, 2108 (1988); see also 
Breard v. Greene
, 523 U.S. 371, 375, 140 L. Ed. 2d 529, 537, 118 S. Ct. 1352, 1354 (1998) (holding that, “absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State”).

Here, the Vienna Convention provides that the rights expressed in the Convention, “shall be exercised in conformity with the laws and regulations of the receiving State subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.” 21 U.S.T. at 101; see also 
Breard
, 523 U.S. at 375, 140 L. Ed. 2d at 537, 118 S. Ct. at 1355 (reaching a similar conclusion).

Defendant provides no explanation as to how section 2–1401’s limitation period prevents “full effect” from being given to the purposes of the Vienna Convention. Defendant had ample opportunity to raise his claim and have it considered on the merits during his trial, on direct appeal, and during the two years following the entry of judgment. We do not believe that a reasonable limitation period designed to preserve the public’s interest in the finality of judgments can be construed as a rule that frustrates the purposes of the Vienna Convention. Because the treaty specifically states that the forum court’s rules and regulations will govern, we have no basis to conclude that the reasonable limitation period violates international law.

Mandamus
 Proceeding

In the 
mandamus
 proceeding, defendant and the Consul General argue that 
mandamus
 relief is appropriate because (1) defendant’s conviction and sentence are void; and (2) they raise issues of great public importance and of great importance to the administration of justice.

We have already rejected the argument relating to voidness and need not consider it further.

Mandamus
 is an extraordinary remedy to compel a public officer to perform a nondiscretionary act. 
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 229 (1999). This court will not issue a writ of 
mandamus
 absent a showing of “a clear, affirmative right to relief, a clear duty of the [public officer] to act, and clear authority in the [public officer] to comply with the writ.” 
Spagnolo
, 186 Ill. 2d at 229.

Although this action may involve issues of “great public importance and of great importance to the administration of justice,” that, in and of itself, is not a reason to grant 
mandamus
 relief. Here, defendant and the Consul General have not demonstrated that they have a clear, affirmative right to relief. Absent such a showing, we will not issue a writ.

CONCLUSION

We affirm the judgment of the circuit court of Cook County. The clerk of this court is directed to enter an order setting Wednesday, November 22, 2000, as the date on which the sentence of death entered by the circuit court shall be implemented. Defendant shall be executed in the manner provided by law (725 ILCS 5/119–5 (West 1998)). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where defendant is confined.

Affirmed.
 

JUSTICE BILANDIC, specially concurring:

I agree that defendant’s claim is procedurally barred and that the judgment of conviction is not void. I therefore join the majority opinion. I write separately, however, to address an issue that was raised during oral argument–the repatriation of defendant to the Republic of Poland.

Defendant was born in Poland. However, as the circuit court observed, defendant has lived in this country for all but the first 18 months of his life. Defendant has attended school here, has earned a living here, and has even served in the United States army. Defendant has committed numerous other crimes for which he was imprisoned in the United States. In short, defendant’s life history reflects that he would be a stranger in Poland–without immediate family, friends, and social roots.

A significant interest of the Polish government in this case is to spare defendant from the death penalty. At the time of defendant’s arrest in 1981 for the rape and murder of Barbara Doyle, Poland employed the death penalty. Poland abolished its death penalty, effective January 1, 1998. Amnesty International Report, 
The Death Penalty Worldwide: Developments in 1997
, ACT 50/04/98, April 1998, at 5-6.

Defendant has received nearly 20 years of due process from the Illinois courts. We have treated defendant in precisely the same manner as we would treat a United States citizen, and we have given defendant every constitutional right and protection that we would give a United States citizen. Nevertheless, I note that, although such a decision is not within the province of this court, I would favor the repatriation of defendant, a convicted murderer and rapist, to Poland. The Polish government, however, has never requested the return of defendant to Poland. It is up to the Polish government to initiate discussions in this regard with the appropriate authorities of the United States government.

JUSTICE McMORROW, concurring in part and dissenting in part:

Like Justice Heiple, I believe that the State’s admitted violation of the Vienna Convention on Consular Relations is a serious matter which requires remedy by this court. However, unlike Justice Heiple, I believe that the remedy in this case should be to vacate defendant’s death sentence but not his convictions. I therefore concur in the majority’s affirmance of defendant’s convictions but dissent from the majority’s affirmance of defendant’s death sentence.

Article 36(1)(b) of the Vienna Convention on Consular Relations provides that

“if the accused so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. 
The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.
” (Emphasis added.) Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

The Vienna Convention makes no distinction between resident foreign aliens and recently arrived or visiting foreign nationals. The language of the treaty “is mandatory and unequivocal, evidencing the signatories’ recognition of the importance of consular access for persons detained by a foreign government.” 
Breard v. Pruett
, 134 F.3d 615, 622 (4
th Cir. 1998) (Butzner, J., concurring). Further, “[t]he provisions of the Vienna Convention have the dignity of an act of Congress and are binding upon the states. 
See
 
Head Money Cases
, 112 U.S. 580, 598-99, 5 S. Ct. 247, 253-54, 28 L. Ed. 798 (1884). The Supremacy Clause mandates that rights conferred by a treaty be honored by the states.” 
Breard
, 134 F.3d at 622 (Butzner, J., concurring). In the case at bar, there is no question that the State failed to inform defendant, a citizen of Poland, of his right, under article 36(1)(b) of the Vienna Convention, to contact the Polish consulate at the time of his arrest.

Nor is there any issue that the State’s failure to inform defendant of his right to consular notification is a serious violation of international law, particularly since a sentence of death was imposed. The Inter-American Court of Human Rights
(footnote: 4) has recently held that “failure to observe a detained foreign national’s right to information, recognized in Article 36(1)(b) of the Vienna Convention on Consular Relations, is prejudicial to the due process of law and, in such circumstances, imposition of the death penalty is a violation of the right not to be deprived of life ‘arbitrarily’, as stipulated in the relevant provisions of the human rights treaties (
v.g.
 American Convention on Human Rights, Article 4; International Covenant on Civil and Political Rights, Article 6), with the juridical consequences that a violation of this nature carries, in other words, those pertaining to 
the State’s international responsibility and the duty to make reparation
.”(Emphasis added.) 
The Right to Information about Consular Assistance Within the Framework of the Guarantees of Due Process of Law
, Advisory Opinion OC-16/99 of the Inter-American Court of Human Rights, par. 141.7, October 1, 1999. This holding mirrors this court’s own recognition that death penalty cases require “a high standard of procedural accuracy.” 
People v. Walker
, 91 Ill. 2d 502, 517 (1982).

Further, a violation of the consular notification provisions of the Vienna Convention affects both the rights of the detainee and the interests of the foreign state, in this case, the Republic of Poland. Unquestionably, Poland has a strong state interest in this case. Poland does not have a death penalty. It, therefore, is justifiably interested in aiding and assisting those of its citizens who are subject to the possible imposition of that penalty while abroad. Indeed, as the Consul General for the Republic of Poland in Chicago has frankly acknowledged to this court, it is solely because the Republic of Poland is officially opposed to the death penalty that the Polish government has intervened on behalf of defendant in this case. According to the Consul General, Poland has no intention of adopting a policy of intervention in non-death-penalty cases.

Moreover, Poland is not alone in its concern regarding violations of the right to consular notification in death penalty cases. In the case at bar, 
amici
 the Federal Republic of Germany and the United Mexican States, both signatories to the Vienna Convention, have taken the position that the violation of the consular notification provisions in the instant case must be remedied because of the severity and finality of the death sentence. Before the Inter-American Court, numerous countries, including Mexico, El Salvador, Guatemala, the Dominican Republic, Honduras, Paraguay and Costa Rica supported the principle of judicial enforcement of the Vienna Convention in death penalty cases. See 
The Right to Information about Consular Assistance Within the Framework of the Guarantees of Due Process of Law
, Advisory Opinion OC-16/99 of the Inter-American Court of Human Rights, October 1, 1999.

I am fully aware of the procedural obstacles which confront defendant’s claim in the case at bar. But this is an extraordinary case. More is at stake here than the rights of a single defendant. “The protections afforded by the Vienna Convention go far beyond [defendant’s] case. United States citizens are scattered about the world–as missionaries, Peace Corps volunteers, doctors, teachers and students, as travelers for business and for pleasure. Their freedom and safety are seriously endangered if state officials fail to honor the Vienna Convention and other nations follow their example. Public officials should bear in mind that ‘international law is founded upon mutuality and reciprocity... .’ 
Hilton v. Guyot
, 159 U.S. 113, 228, 16 S. Ct. 139, 168, 40 L. Ed. 95 (1895). *** The importance of the Vienna Convention cannot be overstated. It should be honored by all nations that have signed the treaty and all states of this nation.” 
Breard
, 134 F.3d at 622 (Butzner, J., concurring). As Justice Heiple correctly observes, we cannot expect that the citizens of this country, while abroad, will be afforded their rights under the Vienna Convention, or indeed, under any treaty, if we do not afford those same international rights to foreign nationals here in the United States. Through no fault of its own, the Polish government is only now able to assist its citizen in his death penalty defense. It is in our own self-interest to uphold the principle of international comity, acknowledge the notification violation that occurred in the case at bar, and provide a remedy.

Accordingly, because defendant’s right to consular notification under the Vienna Convention was, in fact, violated in this case; because that violation is an extremely serious matter under international law; because the sovereign state of Poland has a strong and legitimate interest in aiding and assisting its citizens who are subject to death penalty proceedings; and because it is in the self-interest of the citizens of this state to uphold the rights provided by the Vienna Convention and remedy the error that occurred in this case; I would exercise this court’s equitable powers and vacate defendant’s death sentence and remand for a new sentencing hearing. I would further hold that, at the remand sentencing hearing, the State may again pursue the death penalty while the Consul General may assist defendant in his defense.

I believe that the unique and compelling circumstances of this case require a remedy for the State’s violation of the Vienna Convention. I express no opinion, however, on what effect a violation of the right to consular notification would have outside the context of the death penalty or the facts of this case.

CHIEF JUSTICE HARRISON, dissenting:

I join in Justice Heiple’s dissent. I write separately simply to express my view that regardless of the outcome on retrial, defendant cannot be sentenced to death. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998)
, the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). It is therefore void and unenforceable.

JUSTICE HEIPLE, also dissenting:

Defendant, a Polish citizen residing in the United States as a permanent resident alien, was, along with other offenses, tried and convicted of murder and sentenced to death. This court affirmed defendant’s convictions and sentence on direct appeal. Subsequently, defendant filed a section 2–1401 petition for relief from judgment and a petition for a writ of 
mandamus
 based upon an alleged violation of his rights under the Vienna Convention on Consular Relations (Vienna Convention). Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

The Vienna Convention is a binding international treaty to which the United States and the Republic of Poland are parties. Article 36 of the Vienna Convention required the State to inform defendant of his right to contact a Polish consular official at the time of his arrest. This was not done. Upon belatedly learning of the defendant’s situation, however, the Polish government has now intervened on defendant’s behalf.

Although there is no dispute that the State violated the Vienna Convention by failing to provide defendant the required consular notification, the majority declines to provide defendant any relief for this violation. Because this case raises important issues of international relations and the rights of all persons, domestic and foreign, I respectfully dissent.

The State suggests that a letter of apology to the Polish government would rectify this oversight. Whether this apology would be sent before or after defendant’s execution was not specified.

What is cavalierly dismissed here is that the consular notification requirement is meant to ensure that foreign nationals imprisoned abroad have adequate legal representation and that they should be tried in accordance with principles of justice generally recognized in the international community by allowing consular officials to consult with the defendant and with attorneys, court officials and prosecutors. It is important to note that this protection is designed for Americans abroad as well as for foreign nationals in the United States. In the instant case, however, the Polish Consul General was not even aware of defendant’s situation until 1998, some 16 years after his conviction and sentence.

The question arises, how can we expect protection under this treaty for American citizens abroad if we do not extend equal protection to foreign nationals residing in the United States? The answer is, we cannot. The decision reached in this case thus has implications reaching far beyond the execution of this defendant.

For the breach of this international convention, defendant’s convictions and sentence should be reversed and the cause remanded for a new trial in compliance with the solemn treaty obligations of the United States, which, under our constitution, are the supreme law of the land.

For the reasons given, I respectfully dissent.

CHIEF JUSTICE HARRISON joins in this dissent.

FOOTNOTES
1:     
1
Unless otherwise noted, we will refer to both treaties singularly as the Vienna Convention.

2:     
2
Article 36 of the Vienna Convention provides, in relevant part:

“(a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that state is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.” 21 U.S.T. at 101.

The Consular Convention provides, in relevant part:

“The appropriate authorities of the receiving State shall immediately inform a consular officer of the sending State of the detention or arrest of any national of the sending State who has not been admitted to permanent residence in the receiving State. In the case of the detention or arrest of a national of the sending State who has been admitted to permanent resident in the receiving State, the appropriate authorities of the receiving State, on the request of such national, shall immediately inform a consular officer of the sending State of such detention or arrest.” 24 U.S.T. at 1260.

3:     
3
A Roman municipal officer who possessed “extensive equitable jurisdiction.” Black’s Law Dictionary 1175 (6th ed. 1990).

4:     
4
The Inter-American Court was established under the authority of the American Convention on Human Rights, a treaty which entered into force in 1978. Located in Costa Rica, the Court has seven judges, elected for renewable six-year terms by the 24 states parties to the American Convention. See generally T. Buergenthal, 
The Inter-American Court of Human Rights
, 76 Am. J. Int’l L. 231 (1982); T. Buergenthal, 
The Advisory Practice of the Inter-American Human Rights Court
, 79 Am. J. Int’l L. 1 (1985). The State Department of the United States actively participated before the Inter-American Court in briefing and oral argument in the proceedings on Advisory Opinion OC-16/99.