Nos. 2--07--0015, 2--07--0016, 2--07--0017 & 2--07--0058 cons. Filed: 10-28-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--61 |
| ANTONIO MALDONADO, | ) ) | Honorable R. Craig Sahlstrom, |
| Defendant-Appellant. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--113 |
| JOSE VASQUEZ, | ) ) | Honorable John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--111 |
| VICTORINO P. MONGUE, | ) ) | Honorable John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

| THE PEOPLE OF THE STATE | ) | Appeal from the Circuit Court |
|---|---|---|
| OF ILLINOIS, | ) | of Boone County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 06--CF--433 |
| v. | ) | |
| | ) | |
| MARCELINO ROMERO-FLORES, | ) | Honorable |
| | ) | John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the opinion of the court:

The defendants, Antonio Maldonado, Jose Vasquez, Victorino Mongue, and Marcelino Romero-Flores, were convicted of aggravated driving under the influence (DUI) (625 ILCS 5/11--501(d)(1)(G) (West 2006)) for driving while intoxicated and while not licensed to drive by this state. The defendants were sentenced to probation and ordered to pay certain fines. On appeal, the defendants argue that section 11--501(d)(1)(G) of the Illinois Vehicle Code (the Vehicle Code) (625 ILCS 5/11--501(d)(1)(G) (West 2006)) was not in effect at the time of their offenses. Accordingly, they request that their convictions be reduced to DUI and that their cases be remanded for new sentencing hearings. Alternatively, the defendants argue that they are entitled to monetary credit against their fines for time spent in custody prior to sentencing. We affirm and remand with directions.

On March 17, 2006, Maldonado was charged by indictment with two counts of aggravated DUI (625 ILCS 5/11--501(d)(1)(G) (West 2006)). On April 16, 2006, Mongue and Vasquez were charged in separate, unrelated indictments with two counts of aggravated DUI as defined in section 11--501(d)(1)(G), and two counts of aggravated DUI as defined in section 11--501(d)(1)(H) (625

ILCS 5/11--501(d)(1)(G), (d)(1)(H) (West 2006)). On November 3, 2006, Romero-Flores was indicted on two counts of aggravated DUI (625 ILCS 5/11--501(d)(1)(G) (West 2006)).

All four defendants were represented by the same trial counsel. Each defendant filed a pretrial motion to declare section 11--501(d)(1)(G) of the Vehicle Code (625 ILCS 5/11--501(d)(1)(G) (West 2006)) unconstitutional. All of the motions were denied. Each of the defendants' cases eventually proceeded to a stipulated bench trial. In each case, the parties stipulated to the foundation and admissibility of the evidence, but did not stipulate whether the evidence was sufficient to convict. The evidence included police reports and Breathalyzer test results as to each defendant. As to Maldonado, Vasquez, and Mongue, the stipulated evidence also included driver's abstracts showing that they did not possess driver's licenses. Finally, in each case, the State proceeded on only one count of aggravated DUI (625 ILCS 5/11--501(d)(1)(G) (West 2006)) and dismissed the additional counts.

The police reports indicated as follows. On February 25, 2006, the police stopped the car Maldonado was driving, because a registration check showed the registered owner to have a suspended driver's license. Maldonado was not the owner of the car. Maldonado admitted that he had been drinking, he failed multiple field sobriety tests, and a Breathalyzer test showed his blood alcohol concentration (BAC) to be 0.238. On March 7, 2006, the police pulled Mongue over after observing him commit several traffic violations. Mongue admitted that he had been drinking, and a Breathalyzer test showed his BAC to be 0.125. On March 26, 2006, Vasquez was pulled over after a police officer saw Vasquez's car straddling the double yellow lines in the center of the road. Vasquez admitted that he had been drinking, and a Breathalyzer test revealed his BAC to be 0.239. On August 19, 2006, Romero-Flores was pulled over for improper lane usage. The officer

determined that Romero-Flores did not have a driver's license and that he was too intoxicated to perform field sobriety tests. Romero-Flores agreed to submit to a Breathalyzer test, which showed his BAC to be 0.184. None of the defendants were licensed to drive.

After reviewing the stipulations, police reports, and Breathalyzer test results, the trial court found each of the defendants guilty of aggravated DUI (625 ILCS 5/11--501(d)(1)(G) (West 2006)). The trial court sentenced Maldonado, Vasquez, and Mongue to 18 months' conditional discharge with stayed jail time and imposed fines of $400 along with various other fines, costs, and fees. The trial court sentenced Romero-Flores to 12 months' probation with stayed jail time and imposed a $600 fine, as well as other fines, costs, and fees. Each of the defendants filed a timely notice of appeal. On March 20, 2008, the defendants filed a motion to consolidate their appeals. On March 31, 2008, this court granted that motion.

The defendants' first contention on appeal is that they were charged and convicted under a subsection of section 11--501 of the Vehicle Code that never took effect. The defendants acknowledge that Public Act 94--329, passed May 18, 2005, and effective January 1, 2006, amended section 11--501(d)(1), in part, by adding an additional subsection, (d)(1)(G), which elevated the offense of DUI, a Class A misdemeanor, to aggravated DUI, a Class 4 felony, where the violation was committed while the driver did not possess a driver's license. The defendants argue, however, that Public Act 94--609, passed May 20, 2005, and effective January 1, 2006, deleted section (d)(1)(G) added by Public Act 94--329, so that the defendants' offenses were once again classified as DUI, a Class A misdemeanor. The defendants argue that Public Act 94--609 controlled at the time of the offenses of Mongue, Maldonado, and Vasquez. The defendants further argue that Public Act 94--963, passed April 25, 2006, and effective June 28, 2006, also did not include the language

added by Public Act 94--329 and that this act controlled at the time of Romero-Flores's offense. Finally, the defendants argue that all the amendments to the Vehicle Code made by the 94th General Assembly, contained in Public Acts 94--110, 94--113, 94--114, 94--116, 94--329, 94--609, and 94--963, irreconcilably conflict, rendering impossible a cohesive reading of all seven acts.

At the outset we note that the defendants are asserting their claim, that section 11--501(d)(1)(G) of the Vehicle Code did not exist at the time of their offenses, for the first time on appeal. Generally, claims raised for the first time on appeal are deemed to be forfeited. People v. Williams, 267 Ill. App. 3d 82, 91 (1994); see also People v. Hauschild, 226 Ill. 2d 63, 73 n.1 (2007) (although courts often use "forfeit" and "waive" interchangeably, the term "forfeit" applies to issues that could have been raised, but were not, and are therefore barred). However, we may review the defendants' contention for plain error, as sentencing a defendant under a nonexistent law would obviously violate his substantial rights. See 134 Ill. 2d R. 615(a) (plain errors affecting substantial rights may be noticed on appeal even though they were not brought to the attention of the trial court); People v. Kitchen, 159 Ill. 2d 1, 42-43 (1994) (plain error may be invoked in criminal cases where the plain error affected substantial rights). Moreover, a conviction or sentence that does not conform to statutory requirements is void (People v. Madej, 193 Ill. 2d 395, 401 (2000)), and challenges to void judgments may be raised at any time (People v. Balle, 379 Ill. App. 3d 146, 151 (2008)).

Issues of statutory construction present questions of law that we review de novo. O'Casek v. Children's Home & Aid Society of Illinois, 229 Ill. 2d 421, 436 (2008). As in all cases of statutory construction, our primary objective is to ascertain and give effect to the intent of the legislature. O'Casek, 229 Ill. 2d at 436. "Statutes are to be construed as they were intended to be construed when

they were passed." People v. Boreman, 401 Ill. 566, 572 (1948). Section 6 of the Statute on Statutes states in pertinent part:

"Two or more Acts which relate to [the] same subject matter and which are enacted by the same General Assembly shall be construed together in such manner as to give full effect to each Act except in case of an irreconcilable conflict. In case of an irreconcilable conflict the Act last acted upon by the General Assembly is controlling to the extent of such conflict. ***

An irreconcilable conflict between [two] or more Acts which amend the same section of an Act exists only if the amendatory Acts make inconsistent changes in the section as it theretofore existed." 5 ILCS 70/6 (West 2006).

The general rule is that, when an act is amended so as to read as it is repeated in the amendatory act, portions of the old law not repeated are deemed repealed. People v. Caraballo, 231 Ill. App. 3d 685, 687 (1992). "However, courts will strive to find harmony between legislative acts so as to give effect to the legislature's intent. For example, our supreme court has stated that, '[i]f the two enactments are capable of being construed so that both may stand, the court should so construe them.' " Caraballo, 231 Ill. App. 3d at 687-88, quoting People v. Ullrich, 135 Ill. 2d 477, 483 (1990). Furthermore, when we determine the intent of the legislature as to a particular act or amendment, we are not confined to its literal language, but may consider its history and subsequent amendments. Caraballo, 231 Ill. App. 3d at 688.

As stated by our supreme court:

"When confronted with problems arising when two or more bills are passed at the same session of the legislature, each pertaining to the same subject or amending the same

-6-

statute, the primary question, as in all cases of statutory construction, is the intent of the legislature, rather than the technical priority of the passage of the acts. [Citation.] The whole record of the legislature, including acts passed at subsequent sessions, is open to ascertain such intent, and, once ascertained, it will be given effect irrespective of priority of enactment. [Citations.] For a later enactment to operate as a repeal by implication of an earlier one there must be such total and manifest repugnance that the two cannot stand together. [Citations.] On the other hand, if the two enactments are capable of being construed so that both may stand, it is the duty of this court to so construe them. [Citations.]

    \*\*\*

    \*\*\* And, in the absence of a clear legislative intent to the contrary and where two acts are not so inconsistent that both cannot stand and be given effect, a later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first. [Citations.]"

People ex rel. Dickey v. Southern Ry. Co., 17 Ill. 2d 550, 554-56 (1959).

In Dickey, at issue were two 1957 amendments to section 17--2 of the Illinois School Code (then Ill. Rev. Stat. 1955, ch. 122, par. 17--2, now 105 ILCS 5/17--2 (West 2006)). The first amendment, among other things, amended section 17--2 by adding section 17--2(3), which addressed the annual tax a school board could levy, for building and educational purposes, in districts maintaining grades 1 to 12, and section 17--2(4), which granted school districts the authority to levy transportation taxes if they provided transportation for pupils. Dickey, 17 Ill. 2d at 552. All the

other additions or changes accomplished by the amendment related to the transportation of school children or the transportation fund. Dickey, 17 Ill. 2d at 552-53.

The second amendment, which was passed six days later, also, among other things, amended section 17--2 of the School Code. Dickey, 17 Ill. 2d at 553. It amended sections 17--2(1) and 17--2(3) to increase the rates at which school districts could levy taxes for educational and building purposes. Dickey, 17 Ill. 2d at 553. However, the second amendment omitted section 17--2(4), which had been added by the first amendment and had addressed the transportation tax. Dickey, 17 Ill. 2d at 553. The question presented, therefore, was whether the second amendment had implicitly repealed the school district's authority to levy a transportation tax, section 17--2(4). The defendant argued that the two amendments were inconsistent and that the second amendment, being the last expression of the legislature, must prevail. Dickey, 17 Ill. 2d at 554.

The Dickey court determined that the two amendments were intended to make separate and distinct changes in section 17--2 and that both could be given effect without inconsistency. Dickey, 17 Ill. 2d at 555. The court determined that the purpose of the first amendment was to create a transportation fund for school districts. Dickey, 17 Ill. 2d at 555. The purpose of the second amendment was to adjust educational and building tax rates for certain districts. Dickey, 17 Ill. 2d at 556. The court determined that the purpose of the second amendment was neither antagonistic nor repugnant to the purpose of the first amendment. Dickey, 17 Ill. 2d at 556. "This being the case neither amendment can be said to thwart the other and both may be given effect." Dickey, 17 Ill. 2d at 556.

Our supreme court recently addressed a similar issue of statutory construction in O'Casek. The question in O'Casek was what version of section 2--622(a)(2) of the Code of Civil Procedure

(the Code) was in effect at the time the plaintiff filed her medical malpractice complaint. Before 1995, section 2--622 of the Code provided that a plaintiff, or the plaintiff's attorney, was required to attach to a medical malpractice complaint either (1) an affidavit, with a physician's report attached, verifying that there was a reasonable and meritorious basis for the filing of the action; or (2) an affidavit that the affiant was unable to consult with a physician prior to filing the complaint, because a statute of limitations would have impaired the action. In the second instance, section 2--622 indicated that the plaintiff would have an additional 90 days to file a certificate of merit and the physician's report. See 735 ILCS 5/2--622 (West 1994); O'Casek, 229 Ill. 2d at 425.

The Civil Justice Reform Amendments of 1995 (Pub. Act 89--7, eff. March 9, 1995) amended section 2--622, in part, to add another requirement to the affidavit, namely, verification that the plaintiff had not previously voluntarily dismissed the action. In other words, under Public Act 89--7, a plaintiff was precluded from obtaining a 90-day extension to file a certificate of merit if the plaintiff previously voluntarily dismissed the same or substantially the same cause of action. O'Casek, 229 Ill. 2d at 426. On December 18, 1997, the supreme court held Public Act 89--7 void in its entirety. O'Casek, 229 Ill. 2d at 426, citing Best v. Taylor Machine Works, 179 Ill. 2d 367, 467 (1997). "The amendments made to section 2--622 were not among the core provisions held substantively unconstitutional, but were nonetheless deemed invalid because the core provisions could not be severed from the balance of the Act." O'Casek, 229 Ill. 2d at 426. Thus, after the decision in Best, section 2--622 reverted to the pre-1995 version of the statute. O'Casek, 229 Ill. 2d at 426. The Best court noted, however, that the General Assembly was "free to reenact whatever provisions it deem[ed] desirable or appropriate." Best, 179 Ill. 2d at 471.

The O'Casek court further explained:

"On February 4, 1998, less than two months after our decision in Best, the General Assembly passed Public Act 90--579. Effective May 1, 1998, Public Act 90--579 amended section 2--622(a)(1) by adding naprapaths to the list of covered health professionals. Notably, however, Public Act 90--579 did not add naprapaths to the pre-1995 version of section 2--622 that was in effect after Best. Rather, it added naprapaths to the 1995 version struck down in Best." O'Casek, 229 Ill. 2d at 426.

In O'Casek, the plaintiff filed an amended medical malpractice complaint on August 30, 2002. Attached to the amended complaint was an affidavit provided by plaintiff's attorney stating that he had been unable to obtain a consultation with a health professional before the expiration of the statute of limitations, but that the required certificate and report would be filed within 90 days. O'Casek, 229 Ill. 2d at 426. After failing to timely file the certificate and report, the defendants filed a motion to dismiss. The plaintiff responded by filing a motion to voluntarily dismiss, which the trial court granted. O'Casek, 229 Ill. 2d at 433.

One year later, the plaintiff refiled her cause of action. Attached to the refiled complaint was an affidavit from the plaintiff's counsel stating that he had been unable to obtain a consultation with a health professional and that the required certificate and report would be filed within 90 days. O'Casek, 229 Ill. 2d at 433. The plaintiff's attorney subsequently filed a certificate of merit and a physician's report within the 90 days. O'Casek, 229 Ill. 2d at 433.

The O'Casek defendants filed a motion to dismiss the plaintiff's complaint for failing to comply with section 2--622 of the Code. Specifically, the defendants argued that Public Act 90--579 reenacted the version of section 2--622 that was struck down in Best and that, based on that version of the statute, the plaintiff's attorney was not entitled to a 90-day extension to file the certificate of merit and physician's report, because the plaintiff had previously voluntarily dismissed the

complaint. O'Casek, 229 Ill. 2d at 434. The trial court granted the defendants' dismissal motion. O'Casek, 229 Ill. 2d at 434. On appeal, the appellate court reversed. O'Casek, 229 Ill. 2d at 435. The appellate court determined that Public Act 90--579 did not reenact the provisions of section 2--622 struck down in Best. Accordingly, the appellate court determined that the pre-1995 version controlled, which allowed the plaintiff a 90-day extension to file the certificate of merit and physician's report regardless of whether the plaintiff had previously taken a voluntary dismissal. O'Casek, 229 Ill. 2d at 435.

Our supreme court affirmed the appellate court. O'Casek, 229 Ill. 2d at 436. The supreme court determined that this was essentially an issue of statutory construction and stated that " '[s]tatutes are to be construed as they were intended to be construed when they were passed.' " O'Casek, 229 Ill. 2d at 441, quoting Boreman, 401 Ill. at 572. The O'Casek court determined that the legislature did not intend for Public Act 90--579 to reenact the provisions of section 2--622 struck down in Best. O'Casek, 229 Ill. 2d at 447. In determining what the legislature intended, the O'Casek court found two items significant.

First, the O'Casek court explained that the General Assembly Operations Act (25 ILCS 10/10(f) (West 2004)), the Statute on Statues (5 ILCS 70/5 (West 2004)), and the Illinois House and Senate rules (95th Ill. Gen. Assem. House R. 37(e), Senate R. 5--1(e); 90th Ill. Gen. Assem. House R. 37(e), Senate R. 5--1(e)) all indicated that, in an amendatory act, new matter was to be either underscored or printed in italics and deleted matter was to be shown with a crossed line. O'Casek, 229 Ill. 2d at 445. The O'Casek court held that, "[b]ecause the Illinois Constitution requires that a 'bill expressly amending a law shall set forth completely the sections amended' (Ill. Const. 1970, art. IV, §8(d)), the requirement of italics or underscoring to highlight new matter plays an important role in discerning legislative intent." O'Casek, 229 Ill. 2d at 445. The O'Casek court therefore

determined that, because the only words highlighted in Public Act 90--579 were the words adding naprapaths to section 2--622(a)(1), it could be inferred that this was the only change the legislature intended. O'Casek, 229 Ill. 2d at 445.

Second, the O'Casek court examined the legislative history of Public Act 90--579. O'Casek, 229 Ill. 2d at 446-47. The O'Casek court noted, after reviewing the House and Senate legislative hearings at which Public Act 90--579 was passed, that the legislative history was devoid of any discussion of Best or the Civil Justice Reform Amendments that were struck by Best. O'Casek, 229 Ill. 2d at 447. The O'Casek court held that "[a]lthough, in giving the amendment context, the legislature used the 1995 version of section 2--622, we regard this as a legislative oversight" and that, therefore, Public Act 90--579 did not reenact the version of section 2--622 held invalid in Best. O'Casek, 229 Ill. 2d at 447.

This court recently addressed a similar argument in People v. Prouty, No. 2--07--0111 (September 8, 2008). In that case, the defendant was convicted of aggravated DUI (625 ILCS 5/11--501(d)(1)(A) (West 2006)) because he had committed DUI for the third or subsequent time. The trial court treated the offense as a Class 2 felony and sentenced the defendant accordingly. Prouty, slip op. at 1. On appeal, the defendant argued that he should have been sentenced for a Class 4 felony because Public Act 94--116 (Pub. Act 94--116, eff. January 1, 2006), which amended section 11--501(d)(2) of the Vehicle Code to make a violation of section 11--501(d)(1)(A) a Class 2 felony, was implicitly repealed by Public Act 94--609 (Pub. Act 94--609, eff. January 1, 2006). Prouty, slip op. at 1. Specifically, the defendant argued that Public Act 94--609 did not include the language that Public Act 94--116 had added and thus implicitly repealed the amendment. Prouty, slip op. at 2.

This court determined that, because the two acts did not irreconcilably conflict, the second did not repeal the first. <u>Prouty</u>, slip op. at 1. This court noted that Public Act 94--116 amended the Vehicle Code so as to raise aggravated DUI from a Class 4 felony to a Class 2 felony. <u>Prouty</u>, slip op. at 8. Public Act 94--609 made a much narrower change, limiting the discretion of a trial court to impose probation where the defendant's commission of DUI proximately caused a fatal accident. <u>Prouty</u>, slip op. at 8. This court determined that, because each act made separate and distinct changes to the Vehicle Code, both acts could be given full effect without inconsistency. <u>Prouty</u>, slip op. at 7. This court further held that, because the two acts were passed only four days apart, it could be inferred that the drafters of Public Act 94--609 simply overlooked what had just been added by Public Act 94--116. <u>Prouty</u>, slip op. at 7. This court stated that, "had the legislature consciously intended to repeal what it had passed four days earlier, it probably would have done so explicitly by striking out the language that Public Act 94--116 had added to subsection (d)(2)." <u>Prouty</u>, slip op. at 7. However, the language added by Public Act 94--116 was merely absent from Public Act 94--609.

As pertinent here, Public Act 94--329 amended section 11--501(d)(1), by adding subsections (G) and (H), as follows:

"(d)(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof if:

* * *

(G) the person committed the violation while he or she did not possess a driver's license or permit or a restricted driving permit or a judicial driving permit; or

-13-

(H) the person committed the violation while he or she knew or should have known that the vehicle he or she was driving was not covered by a liability insurance policy." Pub. Act 94--329, eff. January 1, 2006.

Public Act 94--609, which was passed two days later, amended section 11--501(d)(2) as follows:

"(2) Except as provided in this paragraph (2), a person convicted of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof is guilty of a Class 4 felony. *** Aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof as defined in subparagraph (F) of paragraph (1) of this subsection (d) is a Class 2 felony, for which the defendant, unless the court determines that extraordinary circumstances exist and require probation ~~if sentenced to a term of imprisonment~~, shall be sentenced to: ***." Pub. Act 94--609, eff. January 1, 2006.

Public Act 94--609 set forth section 11--501(d)(1) as it read before any amendments by Public Act 94--329. In other words, Public Act 94--609 did not include subsection (d)(1)(G) or (d)(1)(H) as added by Public Act 94--329. These subsections were absent, not stricken out.

Public Act 94--963, which was passed about one year later, amended sections 11--501(j) and (k) as follows:

"(j) In addition to any other penalties and liabilities, a person who is found guilty of or pleads guilty to violating subsection (a), including any person placed on court supervision for violating subsection (a), shall be fined $500, payable to the circuit clerk, who shall distribute the money as follows: ***. *** Any moneys received by a law enforcement agency under this subsection (j) shall be used for enforcement and prevention of driving

while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof, as defined by this Section, including but not limited to the ~~to~~ purchase of law enforcement equipment and commodities that will assist in the prevention of alcohol related criminal violence throughout the State; police officer training and education in areas related to alcohol related crime, including but not limited to DUI training; and police officer salaries, including but not limited to salaries for hire back funding for safety checkpoints, saturation patrols, and liquor store sting operations. Equipment and commodities. ~~This~~ shall include, but are ~~is~~ not limited to ***. Any moneys received by the Department of State Police under this subsection (j) shall be deposited into the State Police DUI Fund and shall be used for enforcement and prevention of driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof, as defined by this Section, including but not limited to the ~~to~~ purchase of law enforcement equipment and commodities that will assist in the prevention of alcohol related criminal violence throughout the State; police officer training and education in areas related to alcohol related crime, including but not limited to DUI training; and police officer salaries, including but not limited to salaries for hire back funding for safety checkpoints, saturation patrols, and liquor store sting operations.

(k) The Secretary of State Police DUI Fund is created as a special fund in the State treasury. All moneys received by the Secretary of State Police under subsection (j) of this Section shall be deposited into the Secretary of State Police DUI Fund and, subject to appropriation, shall be used for enforcement and prevention of driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof, as defined by this Section, including but not limited to the ~~to~~ purchase

of law enforcement equipment <u>and commodities</u> to assist in the prevention of alcohol related criminal violence throughout the State<u>; police officer training and education in areas related to alcohol related crime, including but not limited to DUI training; and police officer salaries, including but not limited to salaries for hire back funding for safety checkpoints, saturation patrols, and liquor store sting operations</u>." Pub. Act 94--963, eff. June 28, 2006.

As in <u>Dickey</u> and <u>Prouty</u>, there is no irreconcilable conflict between Public Act 94--329 and either Public Act 94--609 or Public Act 94--963. These three acts "were intended to make separate and distinct changes" to the Vehicle Code and, thus, may "be given effect without inconsistency." <u>Dickey</u>, 17 Ill. 2d at 555. Public Act 94--329 increased the penalties for certain violations of section 11--501 by making these offenses aggravated DUI. Public Act 94--609 had a narrower purpose and substantively changed only one sentence in the statute to permit probation under "extraordinary circumstances" for a violation of section 11--501(d)(1)(F). Public Act 94--963 amended the statute to expand the purposes for which DUI fines and fees could be used. These enactments affected different provisions of the statute, and all three may be given effect. An irreconcilable conflict exists between two acts only if they make inconsistent changes in the statute "as it theretofore existed." 5 ILCS 70/6 (West 2004). Because the changes made by Public Act 94--329, Public Act 94--609, and Public Act 94--963 are not inconsistent, all three acts must be construed to give full effect to each act. See 5 ILCS 70/6 (West 2006); <u>Ullrich</u>, 135 Ill. 2d at 483 (if two enactments are capable of being construed so that both may stand, the court should so construe them).

Furthermore, a reading of Public Act 94--963 contradicts the defendants' claim that this act failed to incorporate the language of subsection (d)(1)(G) "anywhere in its body." In fact, the Public Act 94--329 version of section 11--501 of the Vehicle Code is set forth, in its entirety, in Public Act 94--963. Thus, Public Act 94--963 does not conflict with, but incorporates, the amendments

contained in Public Act 94--329. However, even if Public Act 94--963 had not incorporated the amendments made by Public Act 94--329, as stated above, Public Act 94--963 does not irreconcilably conflict with Public Act 94--329, and both acts may be construed to give full effect to each.

Moreover, Public Acts 94--329 and 94--609 were passed only two days apart, suggesting that the drafters of Public Act 94--609 simply overlooked what had been added by Public Act 94--329. "Such an inference is more plausible than positing that the legislators had a sudden change of heart but chose to express it by passive indirection." Prouty, slip op. at 7-8. Additionally, any repeal of the changes made by Public Act 94--329 would have been by implication, as Public Acts 94--609 and 94--963 did not show the Public Act 94--329 changes stricken out. For an act to repeal an earlier one by implication, there must be "such total and manifest repugnance that the two cannot stand together." Dickey, 17 Ill. 2d at 555. That is not the case here. As stated, there are no irreconcilable conflicts between the three acts.

The fact that the legislature repeated portions of section 11--501, as it existed prior to Public Act 94--329, in Public Acts 94--609 and 94--963 does not show that the legislature never intended for section 11--501(d)(1)(G) to take effect. As stated by our supreme court:

"The provisions of any statute, so far as they are the same as those of any prior statute, must be construed as a continuation of such prior provisions and not as a new enactment. [Citation.] It is also the rule that when the legislature enacts an amendatory statute providing that a certain act shall be amended so as to read as repeated in the amendatory act, such portions of the old law as are repeated in the new act, either literally or substantially, are to be regarded as a continuation of the old law and not the enactment of a new law on that subject." S. Buchsbaum & Co. v. Gordon, 389 Ill. 493, 500-01 (1945).

Nos. 2--07--0015, 2--07--0016, 2--07--0017 & 2--07--0058 cons.

The portions of Public Acts 94--609 and 94--963 repeating section 11--501(d) as it existed before Public Act 94--329, therefore, must be regarded as a continuation of the old law and not the enactment of a new law on that subject. The fact that subsection (d)(1)(G) does not appear in Public Act 94--609 is not an indication that the legislature intended to repeal the addition of subsection (d)(1)(G) contained in Public Act 94--329. As stated above, "a later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner it did the first." Dickey, 17 Ill. 2d at 556. Public Act 94--329 was such an intermediate act and remained in force despite the later passage of Public Acts 94--609 and 94--963.

Applying the rationale in O'Casek to the facts of the present case, we similarly conclude that neither Public Act 94--609 nor Public Act 94--963 repealed the addition of subsection (d)(1)(G) to section 11--501 of the Vehicle Code. As set forth in O'Casek, the General Assembly Operations Act (25 ILCS 10/10(f) (West 2004)), the Statute on Statutes (5 ILCS 70/5 (West 2004)), and the Illinois House and Senate Rules (95th Ill. Gen. Assem. House R. 37(e), Senate R. 5--1(e); 90th Ill. Gen. Assem. House R. 37(e), Senate R. 5--1(e)) indicate that matter to be deleted is to be shown crossed with a line. Here, Public Acts 94--609 and 94--963 did not show the Public Act 94--329 amendments crossed with a line. Rather, in Public Act 94--609 the Public Act 94--329 amendments were absent. Although Public Act 94--963 contained multiple versions of the Vehicle Code as amended by various public acts, it actually set forth a version of the Vehicle Code that incorporated the amendments of both Public Acts 94--329 and 94--963. In that version, the Public Act 94--329 amendments were not shown crossed with a line. As in O'Casek, this indicates that the legislature did not intend to repeal Public Act 94--329.

Nos. 2--07--0015, 2--07--0016, 2--07--0017 & 2--07--0058 cons.

Furthermore, the legislative history does not show that the legislature intended for either Public Act 94--609 or Public Act 94--963 to repeal Public Act 94--329. Public Act 94--609 began as Senate Bill 1495 (94th Ill. Gen. Assem., Senate Bill 1495 (2005 Sess.)). On April 15, 2008, Senator Kirk Dillard addressed Senate Bill 1495:

"SENATOR DILLARD: *** This is an initiative of the Mothers Against Drunk Driving organization. And it flip-flops the burden of proof in certain kinds of matters and puts the burden on the defendant to beg why they should get probation if they killed somebody in a drunk driving accident, and to--to have the burden on the defendant and prove to the court why they shouldn't go to jail for causing an accident while driving under the influence of--of alcohol." 94th Ill. Gen. Assem., Senate Proceedings, April 15, 2005, at 27 (Statements of Senator Dillard).

The Senate immediately thereafter unanimously passed Senate Bill 1495. 94th Ill. Gen. Assem., Senate Proceedings, April 15, 2005, at 28. On May 20, 2005, Representative Chapin Rose spoke about Senate Bill 1495 to his colleagues in the House:

"Rose: *** Senate Bill 1495 provides that if a defendant is convicted of aggravated driving under the influence of alcohol, drugs, or intoxicating compounds because his or her DUI violation--excuse me, violation was the cause of the death of one or more persons, the defendant shall be sentenced to a term of imprisonment, unless the court determines that extraordinary circumstances exist and require probation. I would ask for favorable adoption of Senate Bill 1495 by this Body. Thank you." 94th Ill. Gen. Assem., House Proceedings, May 20, 2005, at 123 (Statements of Representative Rose).

The House of Representatives passed the bill. 94th Ill. Gen. Assem., House Proceedings, May 20, 2005, at 123.

Public Act 94--963 started at Senate Bill 1088 (94th Ill. Gen. Assem., Senate Bill 1088 (2006 Sess.)).  On April 4, 2006, Senator Don Harmon addressed Senate Bill 1088:

"SENATOR HARMON: *** It amends the Vehicle Code to expand the purposes for which DUI fines and fees may be used to include not only the purchase of law enforcement equipment, but also enforcement and prevention of alcohol and drug related crimes, including officer training and staffing for safety check points, saturation patrols, and liquor store sting operations."  94th Ill. Gen. Assem., Senate Proceedings, April 4, 2006, at 47-48 (Statements of Senator Harmon).

Shortly thereafter, the Senate passed Senate Bill 1088.  94th Ill. Gen. Assem., Senate Proceedings, April 4, 2006, at 49.  On April 25, 2006, without any substantive discussion of the bill, the House of Representatives unanimously passed Senate Bill 1088. 94th Ill. Gen. Assem., House Proceedings, April 25, 2006, at 52.

As in O'Casek, the legislative history of Senate Bills 1495 and 1088 is devoid of any discussion of Public Act 94--329 or any repeal of the amendments that it had made to the Vehicle Code.  The legislative history of Public Act 94--609 demonstrates that the General Assembly's intent, when it adopted that act, was merely to limit the discretion of a trial court to impose probation where a defendant's commission of DUI proximately caused a fatal accident.  This is consistent with the fact that the language implementing this change was highlighted and the amendments of Public Act 94--329 were absent, not crossed with a line.  The legislative history of Public Act 94--963 indicates that the General Assembly's intent, when it adopted that act, was to broaden the scope for which DUI fines and fees could be used.  This is consistent with the fact that Public Act 94--963 incorporates Public Act 94--329 and does not show those amendments crossed with a line.  As the O'Casek court determined that the use of the 1995 version of section 2--622 in giving context to the amendments

of Public Act 90--579 was merely a legislative oversight (O'Casek, 229 Ill. 2d at 447), we similarly conclude that the pre-Public Act 94--329 language used in giving context to the amendments of Public Act 94--609 was a legislative oversight. Additionally, because Public Act 94--963 incorporated the amendments of Public Act 94--329, the legislature did not intend to repeal the amendments enacted by Public Act 94--329. See Caraballo, 231 Ill. App. 3d at 688 (in determining legislative intent as to a particular amendment, it is proper to consider any subsequent amendments).

The defendants' reliance on People ex rel. Hines v. Baltimore & Ohio Southwestern R.R. Co., 366 Ill. 318, 322 (1937), and In re J.H., 304 Ill. App. 3d 188, 196 (1999), in support of their claim that an irreconcilable conflict prevented section 11--501(d)(1)(G) from taking effect, is unpersuasive. In Hines, the legislature passed three consecutive acts amending a statute that limited the rates at which counties could levy taxes. Each amendatory act set forth the statute, as amended, in its entirety. Hines, 366 Ill. at 321. The first amendment created an exception to the tax limitation for a county blind relief fund. The second amendment excepted taxes for a pauper relief fund, but omitted the exception for the blind relief fund. The third amendment created an exception for "mothers' pension fund[s]" but omitted the other two exceptions. Hines, 366 Ill. at 321. None of the amendatory acts expressly repealed any other act. Hines, 366 Ill. at 321. The supreme court held that the amendments were irreconcilable as to the subject matter of exceptions and that, therefore, the last amendment prevailed. Hines, 366 Ill. at 322. Accordingly, the county tax limit applied to levies for blind relief and pauper relief, but not to levies for mothers' pension funds. Hines, 366 Ill. at 323.

Hines is distinguishable from the present case in that, in Hines, all three amendments pertained to the same portion of the statute and the same subject matter--exceptions to the county tax limitation. In the present case, Public Acts 94--329, 94--609, and 94--963 addressed different

portions of the statute and different subject matter. Moreover, as we recently noted, Hines was decided before the legislature enacted what is now section 6 of the Statute on Statutes. Prouty, slip op. at 9. To the extent that Hines is inconsistent with Dickey, we follow Dickey, the more recent opinion of our supreme court. Prouty, slip op. at 9.

J.H. is also factually distinguishable from the present case. In J.H., the legislature passed three public acts amending section 2--28 of the Juvenile Court Act of 1987 (705 ILCS 405/2--28 (West 2006)) during the same session. J.H., 304 Ill. App. 3d at 195-96. The last amendment replaced section 2--28 with two separate provisions, one applying to counties with populations of less than 3 million and one applying to counties with populations of 3 million or more. J.H., 304 Ill. App. 3d at 196. The appellate court held that, although the first two amendments could be read together to give full effect to each, they could not be construed with the last amendment because they did not contain separate provisions distinguishing among counties based on populations. J.H., 304 Ill. App. 3d at 196. Likewise, the last amendment could not be reconciled with the first two amendments because it essentially created an entirely new statutory scheme. In the present case, Public Act 94--329 amended only a discrete portion of the Vehicle Code and is capable of being construed with Public Acts 94--609 and 94--963.

The defendants also argue that there are numerous conflicts among the seven public acts passed by the 94th General Assembly amending the Vehicle Code, rendering impossible a cohesive reading of all seven acts. In addition to Public Acts 94--329, 94--609, and 94--963, there were also earlier amendments contained in Public Acts 94--110, 94--113, 94--114, and 94--116. These earlier acts also do not irreconcilably conflict with Public Act 94--329. Public Act 94--110 amended section 11--501 of the Vehicle Code to increase the penalties for a DUI violation committed with a child under 16 years old in the vehicle. See Pub. Act 94--110, eff. January 1, 2006; 94th Ill. Gen.

Assem., Senate Proceedings, May 17, 2005, at 55; 94th Ill. Gen. Assem., House Proceedings, April 5, 2005, at 123-24. Public Act 94--113 (House Bill 1081), which replicated Public Act 94--609 (Senate Bill 1495), limited the discretion of a trial court to impose probation where the defendant's commission of DUI proximately caused a fatal accident. See Pub. Act 94--113, eff. January 1, 2006; 94th Ill. Gen. Assem., Senate Proceedings, May 11, 2005, at 108; 94th Ill. Gen. Assem., House Proceedings, March 9, 2005, at 7. Finally, Public Acts 94--114 and 94--116 amended the Vehicle Code to set up a series of enhanced penalties for someone who is repeatedly convicted of DUI. See Pub. Act 94--114, eff. January 1, 2006; 94th Ill. Gen. Assem., Senate Proceedings, May 11, 2005, at 108; 94th Ill. Gen. Assem., House Proceedings, February 24, 2005, at 61; Pub. Act 94--116, eff. January 1, 2006; 94th Ill. Gen. Assem., Senate Proceedings, May 16, 2005, at 79; 94th Ill. Gen. Assem., House Proceedings, April 14, 2005, at 107. Because these previous acts, in relation to Public Act 94--329, made separate and distinct changes to the Vehicle Code, Public Act 94--329 may be given effect without being inconsistent with any of the other acts. Dickey, 17 Ill. 2d at 555.

The defendants also argue that the rule of lenity requires that any ambiguity in section 11--501 of the Vehicle Code must be resolved in their favor. When construing criminal statutes, the rule of lenity requires that any ambiguity must be resolved in a manner that favors the accused. People v. Jones, 223 Ill. 2d 569, 581 (2006). However, this rule does not justify the failure to apply a criminal statute where the legislature clearly intended its application. People v. Hicks, 164 Ill. 2d 218, 222 (1995). Here, we have determined that in passing Public Act 94--329 the legislature clearly intended to make a violation of section 11--501(a)(1), while driving without a driver's license, aggravated DUI, a Class 4 felony. We have further determined that the legislature clearly did not intend for Public Act 94--609 or 94--963 to repeal this amendment. Accordingly, because the

legislative intent here is clear, there is no justification for applying the rule of lenity. See <u>Hicks</u>, 164 Ill. 2d at 222.

Finally, the defendants argue that they are entitled to monetary credit against their respective fines for time spent in custody prior to sentencing. A defendant is entitled to a $5-a-day credit against his fine for each day he spent incarcerated. See 725 ILCS 5/110--14 (West 2004). Although the defendants did not object at trial or raise this issue in posttrial motions, the issue is not forfeited. The application for credit to which a defendant is statutorily entitled can be made for the first time on appeal. <u>People v. Woodard</u>, 175 Ill. 2d 435, 457-58 (1997). In sentencing the defendants, the trial court ordered them to pay fines ranging from $400 to $600. The parties agree that the record indicates that all of the defendants spent some time in custody, but that the record is not clear as to how many days each of the defendants spent in custody. The State concedes that the defendants are entitled to credit for that time and that their cases should be remanded to determine the amount of that credit. We accept the State's concession and remand the matter for the trial court to determine the amount of time each of the defendants spent in custody and to grant the appropriate amount of credit against each defendant's fine. See <u>People v. Neff</u>, 369 Ill. App. 3d 358, 366 (2006).

For the foregoing reasons, the judgments of the circuit court of Boone County are affirmed, and the causes are remanded with directions.

Affirmed and remanded with directions.

McLAREN and O'MALLEY, JJ., concur.