THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH A. NETTNIN, Defendant-Appellant.

Second District   No. 2—89—0890

Opinion filed July 17, 1991.

G. Joseph Weller and Sherry R. Engelstad, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Joseph A. Nettnin, was charged by indictment with unlawful possession of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)), and, on April 19, 1989, he was found guilty of the charge. On June 16, 1989, defendant's post-trial motion was denied, and, on August 25, 1989, he was sentenced to five years' imprisonment.

Defendant timely appeals, raising the sole issue whether the inadvertent failure of the prosecution to tender to defendant two pages of a five-page police report during discovery constitutes reversible error requiring a remand for a new trial. Defendant has not demonstrated prejudicial error, and we therefore affirm.

On August 24, 1988, the State made its disclosure to defendant which, among other things, consisted of the names of four potential witnesses and the written or recorded statements of those witnesses and of the defendant which were contained on pages labelled "KAM 1-5."

At the jury trial held on April 19, 1989, Officer Stephen Weatherford of the Elmhurst police department testified that he stopped defendant for speeding at 11:30 a.m. in the vicinity of Willow Street and North Avenue in Elmhurst, Illinois. Defendant was driving a silver Mercedes Benz with license plate number RR112. Weatherford obtained information from his dispatcher indicating that a car with this license plate number had been reported stolen and that the keys were with the car at the time it was stolen.

Weatherford stated that, when he approached defendant, Weatherford "asked him who the car belonged to." Defendant replied that the car belonged to a friend named Reinhold. Defendant did not know Reinhold's last name. Defendant said that Reinhold lived in Crystal Lake, but he did not know Reinhold's address. After this brief interview (defendant's first statement), Officer Weatherford placed defendant under arrest for unlawful possession of a stolen vehicle. After placing defendant in the police car, Weatherford looked into the Mercedes to find further owner information and to see whether there were any personal belongings or any contraband in the car. He found a handicap decal issued by the Secretary of State to Reinhold Reinicke which indicated an address on Nish Road in Crystal Lake.

During the five-minute ride to the police station, defendant volunteered (second statement) that he had purchased the car from his friend Reinhold for $2,800 and that he was making payments of

$100 per week on the car. After Weatherford took defendant to the interview room at the police station, defendant asked if he could have "the other keys" and added, "They are mine."

Weatherford contacted the Prairie Grove police department where the car had been reported stolen to verify that the car had, in fact, been stolen. He then asked Detective Michael Lullo of the Elmhurst police department to interview defendant.

Detective Lullo interviewed defendant in Weatherford's presence, after defendant was given his *Miranda* warnings. According to Weatherford, defendant (in his third statement) related that he had bought the car for $2,800 from Reinhold, a friend of his. Defendant did not know Reinhold's last name. He had met Reinhold approximately a month before in the Wrightway Tap, a bar in Chicago, and Reinhold had approached defendant to see if defendant wanted to buy the car. On July 16, two Saturdays before the traffic stop, defendant purchased the car from Reinhold and was to pay Reinhold $100 a week for the car. Defendant said he did not have a title or a bill of sale.

After this interview ended, Weatherford took defendant to be fingerprinted and booked. In the booking room, another conversation took place after Weatherford reread the *Miranda* warnings to defendant. Defendant again stated (fourth statement) that he bought the car from Reinhold for $2,800 and, in response to a query from Weatherford, described Reinhold as a 50-year-old gentleman who was 6 feet tall, weighed 160 pounds and had blond hair.

Detective Lullo's testimony essentially corroborated Weatherford's version of the interview (third statement) wherein defendant stated that he bought the car from Reinhold, whom he had met at the Wrightway Tap in Chicago. Defendant said he made an initial payment of $100 to Reinhold. Defendant had seen Reinhold in the bar occasionally, but he had no way of getting ahold of Reinhold to make further payments since he did not know where Reinhold lived and did not know his telephone number. Although defendant knew the procedure for registering a car in Illinois, this deal was too good to pass up, and he purchased the car with the license plates that were on it and made no attempt to register the car.

During cross-examination, defense counsel attempted to impeach Weatherford with the (presumed) omission in his police report of any reference to defendant's first statement when he was stopped for speeding. Counsel asked Weatherford if he had prepared a three-page police report, and the officer replied that he had done so. Counsel then asked whether Weatherford had included this ini-

tial conversation with defendant in the report. The officer replied affirmatively and showed where in the report he had noted defendant's statement that the car belonged to a friend. At this point, defense counsel requested and obtained a side-bar conference in which he brought to the court's attention that he only received a three-page report from the officer during discovery which did not include the substance of the first conversation between Weatherford and defendant at the site of the traffic stop. Although the pages were labelled "KAM-1 through KAM-5," the sheets were also apparently marked "page 1," "page 2 of 3" and "page 3 of 3." The prosecutor explained that, through a clerical error in photocopying, the defense did not receive the reverse sides of the three sheets so that pages two and four of the text were missing from the report. The trial court was critical of this numbering system which resulted in the confusion; the court noted, as had the prosecution, that the omitted pages created a lack of continuity in the text.

The defense argued that the omissions created surprise and prejudice to defendant so that he had no opportunity, for example, to file a prior motion to suppress defendant's first statement that the car belonged to a friend, a statement which defendant claimed contradicted other statements he had made. The defense moved for a mistrial.

The trial court directed the prosecutor to tender the missing pages to the defense and gave the defense an opportunity to review them. Defense counsel again asked that a mistrial be declared. The court responded that the discovery violation was not of a calculated nature and was merely a mistake. The court recognized that defendant's strategy of impeachment by omission would have to change, but defendant was now in possession of the missing information. The court, although aware that the State could be faulted for not copying the report correctly, observed that the defense should have "picked [ ] up" on the incompleteness of the report. The court denied defendant's motion for a mistrial, and the defense completed its cross-examination of Weatherford. He acknowledged that defendant did not try to evade him or conceal his name; that there was no damage to the ignition lock or door locks; that the keys were in the ignition; and that the car had not been hot-wired, nor had the vehicle identification number been tampered with.

Reinhold Reinicke, who was born in 1902, testified that he owned the silver, 1976 Mercedes Benz whose license plate number was RR112. Reinicke kept the car stored in his barn, leaving the keys in the car because he had never had anything stolen there.

When he awakened on Thursday, July 14, 1988, he saw that the barn door was open and the car was missing. The car was in "A Number 1 condition." He had no intention of selling it, nor did he give anyone authority to take it. He reported the car stolen to the McHenry County sheriff's office. He testified that he kept some papers in the car, including a handicap sign containing his name; the sign was kept in an envelope in the front seat of the car.

Reinicke never heard of the Wrightway Tap in Chicago, and he no longer drank because he was on medication. He would take the train if he went into Chicago. He never heard of Joseph Nettnin and had never seen him before. When Reinicke got his car back, it was scraped on one side, and the tools he kept in the car were missing.

Virginia Nettnin, defendant's mother, testified that the Wrightway Tavern was over a block away from her home on Wrightwood Avenue in Chicago. She stated that the first time she saw the Mercedes was on July 16, 1988, when defendant took her for a ride on the outer drive. She acknowledged that she never saw a title or a bill of sale for the car.

After hearing the arguments of counsel, the jury returned a verdict of guilty.

At the hearing on defendant's post-trial motion, on July 16, 1989, defendant argued that the State's failure to tender the missing pages of the report was a violation of Supreme Court Rule 412(a)(ii) (134 Ill. 2d R. 412(a)(ii)) which prejudiced him because he was prevented from suppressing his first statement to Weatherford that the car he was driving belonged to a friend named Reinhold. Defense counsel asserted that this statement contradicted the remaining statements that the defense was aware of regarding defendant's purchase of the car. Defense counsel claimed that defendant's first statement came as a surprise and, if he had known of the first statement, his strategy would have been different. The defense further argued that, since the evidence had already come in at trial, a continuance would not have cured the error.

The prosecution pointed out that defendant did receive the missing pages and was permitted to cross-examine the State's witnesses. The prosecution argued that the first statement was not at all inconsistent with defendant's other statements and, further, the evidence of guilt was overwhelming so that, even if defendant had had the benefit of prior disclosure, it would not have helped him. The trial court concluded that, based on the totality of the evidence, defendant was not prejudiced by the State's inadvertent

omission of the pages. Defendant's motion for a new trial was denied.

On appeal, defendant contends that he was denied his right to a fair trial by the State's failure to provide, prior to trial, the reverse sides of two pages which contained defendant's first statement to the arresting officer. It appears that the only omitted item of significance was that part of Weatherford's report regarding defendant's first statement to him that he was driving a car that belonged to a friend named Reinhold. Defendant argues that this statement contradicts his other statements that he bought the car from Reinhold and that this inconsistency resulted in prejudice to defendant. Defendant maintains that he was required to change his impeachment strategy midtrial and, had he been aware of the omitted statement prior to trial, he could have sought to suppress that statement.

■■ ■ The failure to comply with discovery requirements does not, in all instances, necessitate a new trial (*People v. Siefke* (1990), 195 Ill. App. 3d 135, 142), and each case must be examined to determine whether the State's failure resulted in harmless error (*People v. Weaver* (1982), 92 Ill. 2d 545, 560). A new trial should be granted only if the discovery violation prejudiced the defendant and the trial court failed to eliminate the prejudice. (*People v. Harris* (1988), 123 Ill. 2d 113, 151-52.) Among the factors to be considered in determining whether a new trial is warranted are: the closeness of the evidence; the strength of the undisclosed evidence; the likelihood that prior notice could have helped the defense discredit the evidence; and the willfulness of the State in failing to disclose discoverable matter. *Siefke*, 195 Ill. App. 3d at 142.

The evidence in this case is not close. The State presented more than sufficient evidence that Reinicke was the owner of the car, that he did not know defendant, had never heard of him or the Wrightway Tap, and had no intention of selling the car. The officers verified that the car had been reported stolen and the license registration remained in Reinicke's name. Defendant's own admissions regarding his lack of ownership documentation support the view that there was no legitimate purchase of the vehicle. Defendant presented no evidence to refute Reinicke's or the officers' testimony. Virginia Nettnin's testimony that she rode in the car was not probative of whether defendant had lawful possession of it.

The undisclosed statement was not sufficiently strong to have had much effect on the weight of the evidence against defendant. Indeed, as the State points out, the statement that he was driving a

car that belonged to a friend named Reinhold does not directly contradict defendant's other statements that he bought the car from Reinhold. It is possible to infer from the totality of defendant's statements and the fact that registration remained in Reinhold's name that Reinhold still retained an ownership interest in the car even though defendant later explained that he purchased it.

Even if the differing (though not necessarily contradictory) explanations of how defendant came to drive the car might have conceivably raised a question of his credibility, we fail to see how the omitted statement would have helped defendant's case had he obtained it in pretrial discovery. In our estimation, Officer Weatherford's testimony regarding defendant's first statement would have been brought out at trial in any event. We find no basis to support defendant's argument that he could have moved successfully to suppress the first statement. The evidence shows that the traffic stop was lawful, and defendant voluntarily made his first statement before he was placed in custody; there is no question of a *Miranda* violation. Defense counsel never moved to strike or suppress the omitted statement or to obtain a continuance once it was disclosed.

■ It is also evident that the State was not willful in failing to provide the missing pages of the report; it had indicated that there would be five pages. Defendant seems to have compounded the photocopying error by failing to notice the lack of continuity and the lacunae in the report. Under the circumstances, defense counsel's surprise at Weatherford's testimony, without more, is not a basis for a new trial. It was not the timing of the disclosure that was damaging, but rather the nature of the overall evidence. We conclude that defendant has not demonstrated prejudice sufficient to reverse his conviction and entitle him to a new trial. The statement in question was in no way pivotal or essential to his conviction.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD, P.J., and INGLIS, J., concur.