THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRACEY R. BRANDON, Defendant-Appellant.

Fourth District    No. 4—95—0734

Argued July 16, 1996.—Opinion filed August 30, 1996.

Daniel D. Yuhas and Arden J. Lang (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial, defendant Tracey Brandon was convicted of robbery, a violation of section 18—1 of the Criminal Code of 1961 (Code) (720 ILCS 5/18—1 (West 1992)). Defendant now appeals his conviction. We affirm.

In April 1994, defendant was charged by information with one count of robbery. In February 1995, a second-amended information additionally charged defendant with one count of theft, a violation of section 16—1(a)(1)(A) of the Code. 720 ILCS 5/16—1(a)(1)(A) (West 1992). The defendant admitted taking roughly $38 from the cash register at the Mobil Super Pantry store in Danville, Illinois, around 4 a.m. on April 4, 1994. Nathan Gray, the store attendant at the time, asserted defendant reached over the counter and removed the money from the open cash register drawer through the use and threat of force. The defendant denied using or threatening force, and it was this issue upon which the trial proceeded.

During the prosecution's opening argument, while giving a narrative of the crime, the prosecutor asserted Gray grabbed defendant's arm as defendant was trying to take the cash out of the cash register drawer. The prosecutor then stated: "The defendant then tells Nathan Gray, 'Let go of my arm, or I am going to kill you.'" At the close of the prosecution's opening argument, defense counsel objected to the statement and asked for a mistrial, or at least a continuance, because the statement had not been disclosed to the defense. The prosecutor responded Gray had moved but his new address had been disclosed to the defense and Gray had been available to the defense. The prosecutor also pointed out page A11 of the State's discovery disclosure. This page contained the final portion of a report by Investigator Bruce Stark, which in turn contained the information

Stark derived from the manager of the Super Pantry, Brenda Boggess. The report states: "Brenda stated that Nathan was upset about the man *threatening to kill him*. He had told the manager that the man was [*sic*] threatened him twice while there." (Emphasis added.) The prosecutor also pointed out the State disclosed to defendant the fact Gray alleged as he chased the defendant out the store, defendant turned, reached into his pocket, and declared "I am going to fuck'n' kill you." The trial court denied defendant's motion for mistrial, but told defense counsel, "[I]f you wish to have time if Mr. Gray wishes to speak with you prior to the commencement of your opening statement, you may have it." This was the trial court's offer. The prosecution did not offer to tender Gray to the defense or offer to facilitate the defense talking to Gray. Defense counsel, without expressly accepting or declining the offer, proceeded with opening argument.

At trial, Boggess testified roughly $38 was missing from the register when she arrived at the Super Pantry. When the prosecutor asked "Why were you there at the time?" she replied "Nathan Gray had called me and said he had just gotten robbed." Defense counsel objected to the conclusion disclosed as hearsay, and the prosecutor responded the statement went to the course of conduct of Boggess. The trial court overruled the objection.

Gray testified he was working at the Super Pantry the early morning of April 4, 1994. The prosecutor asked Gray, "Could you tell us what happened [on April 4]?" to which Gray replied "I was robbed." Defense counsel objected to the statement as a conclusion, but the trial court overruled the objection.

Gray explained defendant approached the counter with some orange juice and bubble gum. He rang the merchandise up, told defendant the price, and took a dollar from defendant to pay for the merchandise. When Gray opened the cash register drawer to give defendant his change, defendant reached across the counter into the drawer and grabbed some of the money. Gray put his hand on top of defendant's and had a brief "tug of war" with him over the money. At this point defendant stated " 'Give me the money and let me go or else I will kill you.' " Defendant's hand slipped out of Gray's hand, and defendant ran out of the store still holding the money. Gray chased defendant around to the side of the building. Defendant slipped and fell, and as he was standing up, he put his hand in his jacket side pocket and stated " 'I am going to kill you.' " Gray immediately ran back into the store and called the police.

During the direct examination of Gray, the following colloquy also occurred:

"Q. [by Assistant State's Attorney Bradley Gerlach:] Okay. Did

you have an occasion to see the Defendant at the Super Pantry a little while after that, after the—after you were robbed?

A. After I was robbed, did I see him again?

Q. Yes.

A. When the police brought him back.

Q. Okay. And about how long was it after the robbery?"

At this point, defense counsel objected to the conclusion contained in the prosecutor's question, and the trial court sustained the objection.

Defendant attempted to impeach Gray's testimony during the cross-examination of Officer Andy Kelley, the investigating officer who interviewed Gray shortly after the crime. During the interview, Gray never mentioned the defendant stated anything while inside the store. Kelley testified, however, Gray did report he grabbed the subject's arm and a struggle occurred. Officer Kelley also testified when he interviewed Gray, Gray "stated he had been robbed."

Defendant, testifying in his own behalf, essentially corroborated most of the testimony by Gray. However, defendant denied making contact with, or threats to, Gray. Defendant asserted after he took the cash from the cash register drawer, he pulled his arm away before it could be grabbed, and he ran out of the store. He never made any threats while either inside or outside the store.

During closing argument, the prosecutor, in summarizing the testimony of Officer Kelley, stated: "Officer Kelley testified that Nathan Gray was nervous. He was upset. This was just after a robbery." Defendant made no objection.

The jury found defendant guilty of both robbery and theft, and the trial court entered a judgment on the verdict of guilty for robbery. The trial court sentenced defendant to five years' imprisonment with credit for 50 days served. Defendant now appeals.

■ Defendant first asserts he was not proved guilty beyond a reasonable doubt of robbery because the evidence was insufficient to show he used force or the threat of force in taking the money from the Super Pantry. This argument is without merit. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). When presented with a challenge to the sufficiency of the evidence, a reviewing court will sustain a criminal conviction if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

Defendant's argument on this issue is premised on the assumption his testimony at trial was truthful. The jury was entitled to believe the testimony of Gray over that of defendant. The jury was entitled to conclude defendant used force when he pulled his arm away from Gray's grasp. The jury was entitled to additionally conclude defendant threatened the use of force when he threatened to kill Gray if Gray did not let go of defendant's arm. Either one of these actions was sufficient to establish the force or threat of force necessary to sustain a robbery conviction. Defendant was convicted of robbery beyond a reasonable doubt.

■ Defendant next asserts he deserves a new trial because the State committed a discovery violation in failing to disclose Gray's testimony defendant stated "Let go of my arm, or I am going to kill you" *while taking the money*. Supreme Court Rule 412(a)(ii) requires the State to disclose to a defendant prior to trial, upon written motion of defense counsel, "the substance of any oral statements made by the accused." 134 Ill. 2d R. 412(a)(ii). The State must also furnish the defendant with a list of witnesses to the making and acknowledgment of such statements. 134 Ill. 2d R. 412(a)(ii). This rule is not limited to formal statements made to the authorities, but encompasses any statements made to anyone that might have bearing on the defendant's guilt or innocence. *People v. R.D.*, 155 Ill. 2d 122, 140, 613 N.E.2d 706, 715 (1993). The State is not required to make a transcript or memorandum of the defendant's oral statement, but must disclose the substance of the statement. *People v. Allen*, 272 Ill. App. 3d 394, 399, 650 N.E.2d 250, 254 (1995).

The principle behind pretrial discovery is to afford the defense an adequate opportunity to investigate and to alleviate untimely interruptions at trial occasioned by disclosures of statements first made at trial. Supreme Court Rule 412 (134 Ill. 2d R. 412) was therefore adopted to prevent surprise and prejudice to the accused. Technical compliance with the rule may be excused, however, where the defendant had access to the statements. Accordingly, when the substance of a statement is contained in a police report that has been previously furnished to the defense pursuant to discovery, the purpose of the rule has been satisfied. *People v. Burgos*, 243 Ill. App. 3d 993, 1004, 614 N.E.2d 59, 65 (1993).

■ Here, in response to discovery requests, the State furnished to defendant a police report filed by Officer Bruce Stark, which summarized an interview with Boggess, the manager of the Super Pantry. Boggess stated Gray was upset about defendant threatening to kill him, and she also stated Gray had reported defendant threatened him twice. These statements, described on page A11 of the State's

discovery answer, were furnished to defendant prior to trial and made him aware of the substance of the statements in the possession of the State. This was a marginally sufficient compliance with the rules of discovery and did inform the defense, but the better practice would have been to specifically disclose what Gray said when questioned by police rather than recounting Boggess' report of what Gray said. Nonetheless, no Rule 412 discovery violation was committed.

■ Defendant next contends the trial court erred in giving the jury Illinois Pattern Jury Instructions, Criminal, No. 3.13, at 83 (3d ed. 1992) (hereinafter IPI Criminal 3d), which states: "Evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged." Defendant is correct: giving this instruction over a defendant's objection constitutes error. See IPI Criminal 3d No. 3.13, Committee Note, at 83 (instruction should be given *"only at the request of the defendant* when there has been impeachment of the defendant by proof of a prior conviction" (emphasis added)), citing *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). We believe the committee comment must be followed, and we do not understand why the instruction was given over the defendant's objection. However, in the unusual circumstances of this case, the error was harmless.

Where the result of the trial would not have been different if the jury instructions had been given as a defendant proposes, the refusal to give the instructions in the manner proposed is held to be harmless. *People v. Miller*, 259 Ill. App. 3d 257, 265, 630 N.E.2d 1125, 1130-31 (1993). The jury is presumed to follow the instructions the court gives it. *People v. Taylor*, 166 Ill. 2d 414, 438, 655 N.E.2d 901, 913 (1995). Error in jury instructions is harmless where the general instructions, taken as a whole, correctly and fully instruct the jury. *People v. Garner*, 248 Ill. App. 3d 985, 990, 618 N.E.2d 753, 757 (1993).

■ Here, looking at the jury instructions as a whole, any error in giving IPI Criminal 3d No. 3.13 was harmless. In addition to IPI Criminal 3d No. 3.13, the trial court instructed the jury in general regarding its duty to determine the credibility of witnesses and what factors it may use in assessing that credibility. Because Gray, the cashier, testified he had been convicted of a felony before, the trial court instructed the jury evidence a *witness* has been convicted of an offense may be considered only as it may affect the believability of the witness. The trial court then similarly instructed the jury evidence of defendant's previous conviction may be considered only as it

affects his believability and not as evidence of his guilt on the offense with which he is charged. The trial court also instructed the jury it was to judge the testimony of defendant in the same manner as it judged the testimony of other witnesses. These instructions fully instructed the jury regarding the proper and limited uses of evidence in determining defendant's and other witnesses' credibility, and defendant does not assert otherwise. Nor do we conclude the trial would have a different result if IPI Criminal 3d No. 3.13 had not been given. Giving IPI Criminal 3d No. 3.13 over defendant's objection was harmless error.

■ Defendant finally argues he deserves a new trial because of the repeated references during trial to the "robbery" that occurred at the Super Pantry. Once again, this argument is without merit. Testimony of an out-of-court statement not offered for its truth, but to show or explain the course of conduct of another, does not constitute hearsay. In such a case, the truth of the out-of-court statement is not at issue, and so the statement is admissible. *People v. O'Toole*, 226 Ill. App. 3d 974, 988, 590 N.E.2d 950, 959 (1992).

Here, Gray's, Boggess', and Stark's testimony Gray was "robbed" was given only in the context of explaining the reason they each took the action they did on the night in question. Gray believed he had been robbed, so he called the police. Boggess was told the store had been robbed, so she went to the store to oversee things. Stark was told the store had been robbed, so he proceeded to investigate. Their testimony in this regard was used only to show their course of conduct, not the truth of the matter asserted, and so was properly admissible.

In addition, a prosecutor may present his theory of the case to the jury so long as the theory is based upon evidence and reasonable inferences. *People v. Williams*, 274 Ill. App. 3d 598, 611, 653 N.E.2d 899, 908 (1995). The prosecutor was entitled during closing argument to argue defendant robbed the store given the evidence that had been heard. In short, there was no error in the witnesses or prosecutor using the word "robbed." The only use of the word "robbed" which was arguably improper as a conclusion was when the prosecutor used the word "robbed" in conducting the direct examination of Gray. Defendant objected, and the trial court sustained the objection. Any prejudice to defendant by this one improper use of the word "robbed" was *de minimis*.

Defendant's conviction is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.