THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PIERRE HARPER, Defendant-Appellant.

First District (5th Division)  No. 1—07—0150

Opinion filed June 12, 2009.

Michael J. Pelletier and Stephanie A. Fisher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Ashley Romito, and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a bench trial, defendant-appellant Pierre Harper (defendant) was convicted of aggravated driving under the influence (aggravated DUI) and sentenced to 18 months' probation. He appeals, contending that his conviction cannot stand because he was charged pursuant to a statutory subsection which never took effect; alternatively, he contends that the trial court committed reversible error when it allowed evidence of his oral admission after the State failed to

tender the statement to the defense during discovery. He asks that we reverse his conviction outrightly pursuant to his first contention on appeal or that we reverse and remand for a new trial pursuant to his second contention. For the following reasons, we affirm.

## BACKGROUND

Defendant was charged pursuant to subsection (d)(1)(H) of section 11—501 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501(d)(1)(H) (West 2006)), a provision originating from Public Act 94—329, which was passed on July 26, 2005, and had an effective date of January 1, 2006. See Pub. Act 94—329, eff. January 1, 2006. The section states:

"(d)(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol *** if:

\* \* \*

(H) the person committed the violation while he or she knew or should have known that the vehicle he or she was driving was not covered by a liability insurance policy." 625 ILCS 5/11—501(d)(1)(H) (West 2006).

Officer Jaime Monsalvo testified that at 3:30 a.m. on January 14, 2006, he and his partner, Officer Jones, received a disturbance call and responded to 1118 South Albany in Chicago. Upon their arrival, Officer Monsalvo saw that a 1993 Mazda vehicle had collided into a parked Dodge vehicle, with both having sustained damage. Officer Monsalvo also saw defendant, who was standing on the sidewalk, and Albert Gross, the owner of the Dodge, yelling and arguing. Officer Monsalvo averred that he saw no one else on the scene at this time. After separating defendant and Gross, Officer Monsalvo approached defendant. He observed that defendant was unbalanced, was slurring his speech, and had a strong odor of alcohol on his breath.

At this point during his testimony, Officer Monsalvo stated that he began speaking to defendant, who told him that he had been driving the Mazda. Defense counsel objected, but the court overruled his objection. Officer Monsalvo continued his testimony, stating that he asked defendant if he had a driver's license and insurance, to which defendant responded that he had no insurance for the Mazda. Officer Monsalvo next asked defendant to submit to field sobriety testing, and defendant agreed; Officer Monsalvo performed three such tests and defendant failed each of them. Officer Monsalvo further testified that he then placed defendant under arrest and transported him to the police station to administer a Breathalyzer test.

On cross-examination, Officer Monsalvo testified that when he arrived at the scene and was attempting to assess the situation, defendant admitted to him that he had been driving the Mazda; however, defendant was first Mirandized only later at the police station, whereupon he invoked his right to remain silent. Officer Monsalvo also stated that while he filled out some of the paperwork in this cause, his partner filled out the arrest report and, upon review, there was no mention in that or any other report that defendant had admitted to driving the Mazda.

Following his testimony, defense counsel made an oral motion to suppress Officer Monsalvo's statement that defendant admitted to him at the scene that he was driving the Mazda, telling the court that he was not aware of defendant's statement until Officer Monsalvo had just testified to it, thereby creating surprise and a *Miranda* violation. The trial court considered the motion and denied it, holding that at the time defendant made the statement (*i.e.*, as Officer Monsalvo arrived and began gathering information), he was not in a custodial state wherein *Miranda* would apply.

The State next presented a stipulation between the parties that defendant had submitted to a Breathalyzer test at the police station which showed his alcohol level at .262. The State also entered into evidence a certified copy of a vehicle abstract, as well as a certified title and registration, for the 1993 Mazda indicating that the vehicle belonged to defendant. Defendant did not object.

Following a two-week continuance, the trial resumed with defense counsel making a motion to strike Officer Monsalvo's testimony regarding defendant's statement to him that he was driving the Mazda. Defense counsel told the court that, pursuant to his pretrial motion for discovery, the State had not tendered to him that statement but, rather, only the statement that defendant, upon being approached by Officer Monsalvo regarding his involvement in the accident, told him he did not have insurance. Defense counsel argued that, since defendant's admission that he was driving was not implicit in his statement that he did not have insurance, the cited testimony should be stricken. The court denied this motion, finding that defense counsel's argument went only to the weight, and not the admissibility, of the statement. The court reasoned that his statement about driving was "arguably" implicit in his statement about insurance and, thus, it was an issue for the trier of fact to determine upon the parties' arguments. The court further commented that there was no surprise here, since defense counsel had been advised that Officer Monsalvo had spoken to defendant.

Gross testified that at approximately 3 a.m. on January 14, 2006, he awoke to a loud bang at 1118 South Albany. He looked out the

window and saw that his Dodge, which was parked on the street outside his home, had been hit. He averred that he ran outside and thought he saw three men and one woman. He inspected his car and saw that it had been damaged by the Mazda. He asked who owned the Mazda, but no one responded. Gross further testified that police soon arrived and, as they began asking questions, someone went up to an officer and told him he had been driving the Mazda. Gross stated that after the officer asked for his driver's license and insurance, the man could not produce these but told the officer his name was Pierre and gave his address.

The State rested its case-in-chief. Defense counsel moved for a directed finding, which the trial court denied, and then rested its case as well. Following closing argument, the trial court asked to see exactly what had been tendered by the State to defense counsel during discovery regarding defendant's statement to Officer Monsalvo that he was driving the Mazda. After a pause in the proceedings, the court issued its decision. It began its colloquy by noting that the evidence showed defendant was at the scene of the collision, was very intoxicated at the time, and had failed the sobriety and Breathalyzer tests. The court mentioned that, even though "there is no specificity about the car in the record," further evidence proved defendant was the owner of the Mazda. Regarding the statement about driving, the court commented that while at the scene, Officer Monsalvo made inquiry of defendant regarding the collision and asked if he had insurance, "all *** under the understanding that [defendant] was the one that was driving the car." The court concluded that, while defendant's statement that he was driving was not documented "as well as it might have been," the statement that he did not have insurance was tendered to defense counsel during discovery, as well as the fact that his statements regarding the collision were made to Officers Monsalvo and Jones. Accordingly, the court held that there was "no question that [defendant] was driving while intoxicated and without insurance" and issued a finding of guilt.

Defense counsel filed a posttrial motion to reconsider his previous motion to suppress Officer Monsalvo's testimony regarding defendant's statement that he was driving or, alternatively, for a new trial. The court took the motion under advisement and, after examining the trial transcript, denied it. The court stated that, based on the evidence, there was "no question" that defendant was driving the Mazda and that his statement about not having insurance "was in reference to inquiries about driving a car that was involved in the accident." The court further explained that defense counsel's position on discovery was "misstated," since he was put on "enough notice" that defendant's

statement about insurance made during his conversation with the officers at the scene would be used against him. The court sentenced defendant to 18 months' probation.

## ANALYSIS

### I. Statutory Validity

Defendant's first contention on appeal is that his conviction for aggravated DUI pursuant to section 11—501(d)(1)(H) of the Code must be reversed because that section never took effect. He argues that there was an irreconcilable conflict between Public Act 94—329, the underlying enactment of subsection (d)(1)(H), and Public Act 94—609, enacted later in time as an amendment to section 11—501(d)(1)(F) and omitting any mention of subsection (d)(1)(H) and, accordingly, the last-in-time act must control, thereby rendering subsection (d)(1)(H) ineffective. Next, he claims that it was the intent of the General Assembly that a version of section 11—501 not containing subsection (d)(1)(H) become law, as exemplified by Public Act 94—963. Finally, defendant argues that because of this ambiguity, a rule of lenity should apply in his favor. We, however, disagree with each of these assertions.

### A. *Public Acts 94—329 and 94—609*

■ First, we find no support for defendant's argument that subsection (d)(1)(H) of the Code never became effective because certain amendments to section 11—501 conflicted irreconcilably.

Section 6 of the Illinois Statute on Statutes addresses situations when the Illinois General Assembly passes multiple amendments to acts involving the same subject matter. See 5 ILCS 70/6 (West 2006). It states that, when this occurs, the acts "shall be construed together in such manner as to give full effect to each Act except in case of an irreconcilable conflict." 5 ILCS 70/6 (West 2006). The statute describes that an "irreconcilable conflict" exists "only if the amendatory Acts make inconsistent changes in the section as it theretofore existed." 5 ILCS 70/6 (West 2006). If there is an irreconcilable conflict, then the act "last acted upon by the General Assembly is controlling to the extent of such conflict." 5 ILCS 70/6 (West 2006).

This has been the underlying principle in our state's case law as well. The court in *People v. Benton* summarized these rules of statutory construction clearly when it stated:

> "[W]hen inconsistent amendments to the same statute are adopted at the same session of the legislature, the later amendment in point of time controls. [Citation.] This rule becomes operative only if it is impossible to give effect to both amendments. Two acts passed at the same session of the legislature are not to be construed

as inconsistent if it is possible to construe them otherwise. [Citation.]" *People v. Benton*, 126 Ill. App. 2d 386, 390-91 (1970). In describing the later-act effectiveness rule, the *Benton* court explained:

"For a later act to operate as a repeal by implication of an earlier one, there must be such manifest and total repugnance that the two cannot stand together. [Citation.] It is only where there is such a clear repugnance between the acts that the provisions of both cannot be carried into effect that the later law must prevail. [Citation.]" *Benton*, 126 Ill. App. 2d at 391.

See also *People ex rel. Dickey v. Southern Ry. Co.*, 17 Ill. 2d 550, 555 (1959) ("if the two enactments are capable of being construed so that both may stand, it is the duty of this court to so construe them"). Ultimately, issues of statutory construction present questions of law that we review on a *de novo* basis. See *O'Casek v. Children's Home & Aid Society*, 229 Ill. 2d 421, 436 (2008).

Quite recently, the Third District Appellate Court of Illinois was confronted with the same situation presented instantly, as two defendants charged under subsection (d)(1)(H) of section 11—501 of the Code argued the identical contentions defendant presents here. Because we find that case to be dispositive, we highlight it now.

In *People v. Gonzalez*, 388 Ill. App. 3d 1003 (2009), the defendants were charged with aggravated DUI under section 11—501(d)(1)(H) for offenses committed after January 1, 2006. At trial, they argued on motions to dismiss that this subsection was not embodied in section 11—501, and the trial court agreed. On appeal, the defendants reasserted their arguments, specifically contending that portions of the statute were in irreconcilable conflict, resulting in subsection (d)(1)(H)'s ineffectiveness and invalidity. The *Gonzalez* court, however, reversed and remanded. See *Gonzalez*, 388 Ill. App. 3d at 1005.

That court began with a concise history of the amendments to section 11—501. The Illinois General Assembly enacted six public acts to this aggravated DUI statute, all effective January 1, 2006, including Public Acts 94—329 and 94—609. See *Gonzalez*, 388 Ill. App. 3d at 1005. Public Act 94—329 amended the section by adding subsections (d)(1)(G) and (d)(1)(H); this latter subsection, as noted, created an aggravated DUI offense for those who drive drunk while not covered by liability insurance. See *Gonzalez*, 388 Ill. App. 3d at 1005-06. The act was approved by the Governor on July 26, 2005. See *Gonzalez*, 388 Ill. App. 3d at 1005. Meanwhile, Public Act 94—609, passed later and amending section 11—501(d)(1)(F) of the Code, provided that if a defendant was convicted of aggravated DUI involving a death, probation would not be available unless a trial judge determined that

extraordinary circumstances warranted it. See *Gonzalez*, 388 Ill. App. 3d at 1006. Public Act 94—609 did not contain or mention the newly enacted subsection (d)(1)(H); it was approved by the Governor on August 16, 2006. See *Gonzalez*, 388 Ill. App. 3d at 1005-06.

Because of Public Act 94—609's failure to mention the new subsection (d)(1)(H), and because it was passed later in time than Public Act 94—329, the *Gonzalez* defendants, identical to defendant here, argued that subsection (d)(1)(H) had been superseded and was not effective at the time they were charged. The reviewing court disagreed. Citing the same principles of statutory construction we have above, including section 6 of the Statute on Statutes and the rule of harmonizing enactments whenever possible, the *Gonzalez* court specifically framed the issue as "whether *** Public Act 94—609—a version of the DUI statute that did not reference subsection[ ] *** (d)(1)(H)—nullified Public Act 94—329, or whether Public Act 94—329 (which amended the DUI statute to include the relevant subsection[ ]) is also effective." *Gonzalez*, 388 Ill. App. 3d at 1005-06.

The *Gonzalez* court found that it was clear that Public Act 94—329, and thus subsection (d)(1)(H), was effective and not nullified by Public Act 94—609. See *Gonzalez*, 388 Ill. App. 3d at 1005-07. The court noted that the legislature obviously created "two separate and distinct changes to section 5/11—501": the intent of Public Act 94—329 was to add another offense to aggravated DUI, namely, driving while drunk and not insured, while the intent of Public Act 94—609 was to impose a sentence of imprisonment (save a determination by the trial court that probation is more appropriate) for a defendant convicted of aggravated DUI involving a death. *Gonzalez*, 388 Ill. App. 3d at 1006-07. As these in no way conflicted, and as the intention of the legislature in passing them was "clear and consistent," the *Gonzalez* court held that the last-passed-act rule did not apply and both enactments could be harmonized, thereby reaffirming the validity of both acts. *Gonzalez*, 388 Ill. App. 3d at 1007.

We find the *Gonzalez* court's reasoning very informative and sound and, since the instant cause mirrors what occurred there, we hold that the same decision is merited here.

As further support for our conclusion, we note another recent and similar case decided by the Second District Appellate Court of Illinois: *People v. Maldonado*, 386 Ill. App. 3d 964 (2008). While *Maldonado* did not specifically involve subsection (d)(1)(H), it did involve four defendants alleging the same challenges of irreconcilable conflict and invalidity as the defendants in *Gonzalez* and defendant here against subsection (d)(1)(H)'s companion, subsection (d)(1)(G). That is, subsection (d)(1)(G) added the aggravated DUI offense of driving drunk

without a license and was enacted at the same time as subsection (d)(1)(H) and pursuant to the same amendatory act: Public Act 94—329. See Pub. Act 94—329, eff. January 1, 2006. Just as the defendants in *Gonzalez* and defendant in the instant cause, the defendants in *Maldonado* argued on appeal that subsection (d)(1)(G) never took effect because Public Act 94—329 was superseded by the later-passed Public Act 94—609, which never mentioned subsection (d)(1)(G), and that there was an irreconcilable conflict between the two rendering it impossible to construe them together. See *Maldonado*, 386 Ill. App. 3d at 967.

As did the *Gonzalez* court, the *Maldonado* court disagreed with the defendants in every respect and held that Public Act 94—609 did not supersede or repeal Public Act 94—329 or subsection (d)(1)(G). See *Maldonado*, 386 Ill. App. 3d at 973-75. Again, beginning with the principles of statutory construction and harmony, *Maldonado* examined the purposes behind each public act, reasoned that they were intended to make separate and distinct changes to section 11—501 and, accordingly, found that they could be given effect without any concern regarding inconsistency. See *Maldonado*, 386 Ill. App. 3d at 968-75. Similar to the *Gonzalez* court, the *Maldonado* court noted that Public Act 94—329 simply increased the penalties for certain violations by raising them to an aggravated DUI level (*i.e.*, driving without a license (subsection (d)(1)(G)) and driving without insurance (subsection (d)(1)(H))), while Public Act 94—609 "had a narrower purpose" and changed only that portion of the statute dealing with sentencing (*i.e.*, imprisonment versus probation). *Maldonado*, 386 Ill. App. 3d at 975. Ultimately, because these enactments "affected different provisions of the statute," they each could be given effect since they were not inconsistent. *Maldonado*, 386 Ill. App. 3d at 975; see also *People v. Prouty*, 385 Ill. App. 3d 149, 151-54 (2008) (challenge to validity of subsection (d)(1)(A) of section 11—501 asserting that Public Act 94—609 made enactment ineffective by omitting language of prior amendment in later amendment could not stand since the two acts did not irreconcilably conflict); *Dickey*, 17 Ill. 2d at 552-56 (where first amendment to statute in Illinois School Code had different purpose than later amendment of same statute, such that neither was antagonistic or repugnant to each other, failure of later amendment to include prior amendment did not render prior amendment ineffective and both were to be given effect); see, *e.g.*, *O'Casek*, 229 Ill. 2d 421.

Because we have concluded, as did our sister appellate courts in the Third and Second Districts based on the closely related factual and argumentative cases of *Gonzalez* and *Maldonado*, that Public Act 94—329 does not irreconcilably conflict with Public Act 94—609, there

is no reason to apply the last-enacted rule; subsection (d)(1)(H) was, indeed, in full effect at the time defendant here committed the crime for which he was charged and found guilty.

## B. *Legislative Intent and Public Act 94—963*

■ In continuing his challenge to the validity of subsection (d)(1)(H), defendant alternatively argues that the legislature's failure to include or mention subsection (d)(1)(H)'s language in Public Act 94—604, along with its enactment of Public Act 94—963 (the seventh amendatory act to section 11—501), prove that the legislature intended Public Act 94—329 to be a nullity. Again, we disagree.

"[I]n all cases of statutory construction, our primary objective is to ascertain and give effect to the intent of the legislature." *Maldonado*, 386 Ill. App. 3d at 968. Generally, portions of an old law not repeated in a newer act amending that law are deemed repealed. See *People v. Caraballo*, 231 Ill. App. 3d 685, 687 (1992). However, in line with our principles regarding the harmonization of amendments, we are not confined to an act's literal language in determining the intent of the legislature but, rather, may consider the act's history and subsequent amendments. See *Caraballo*, 231 Ill. App. 3d at 688. Section 5 of the Statute on Statutes regarding amendatory acts states:

"In construing an amendatory Act ***, matter printed in italics shall be construed as new matter added by the amendatory Act, and matter shown crossed with a line shall be construed as matter deleted from the law by the amendatory Act." 5 ILCS 70/5 (West 2006).

See also *O'Casek*, 229 Ill. 2d at 445 (new matter in amendatory act is to be either underscored or in italics and deleted matter is to be shown with a crossed line; such action by our legislature "plays an important role in discerning legislative intent").

Turning once again to *Maldonado*, we note that the defendants there raised these same arguments regarding legislative intent and Public Act 94—963 as proof that subsection (d)(1)(H) was not to be given effect. First, regarding legislative intent, the *Maldonado* court examined the text of Public Acts 94—329 and 94—609. When the legislature enacted Public Act 94—329 to amend section 11—501(d)(1), it wrote subsection (H) in italics, thereby signifying, pursuant to section 5 of the Statute on Statutes, new matter added to the statute. Public Act 94—609 amending section 11—501(d)(2), followed two days later; it did not include the new subsection (d)(1)(H) but, rather, set forth section 11—501(d)(1) as it read before any amendment made by Public Act 94—329.

From this, we note, as did the *Maldonado* court, that primarily, subsection (d)(1)(H) was merely absent from the later amendment

derived from Public Act 94—609; it was not stricken out or crossed with any line and, thus, was not deleted, pursuant to section 5 of the Statute on Statutes. Moreover, as the *Maldonado* court pointed out, these acts were passed only two days apart, "suggesting that the drafters of Public Act 94—609 simply overlooked what had been added by Public Act 94—329." *Maldonado*, 386 Ill. App. 3d at 976 (this inference is more reasonable than one suggesting the legislators suddenly changed their minds but did not express this with more direct language or action). In addition, without any direct action, we would be faced with a repeal by implication, which can only occur where two amendments are repugnant to each other; we have already concluded that this is not the case here. See *Maldonado*, 386 Ill. App. 3d at 976; see also *O'Casek*, 229 Ill. 2d at 445.

Second, regarding defendant's additional source of "proof" of the legislature's intent to invalidate subsection (d)(1)(H), namely, the enactment of Public Act 94—963, we find, just as the *Maldonado* court did, that this argument is wholly misplaced. This seventh amendment to section 11—501 was passed about one year after Public Acts 94—329 and 94—609 and amended sections 11—501(j) and (k). Like Public Act 94—609, it did not mention the new amendment of subsection (d)(1)(H) but, rather, restated the statute as it existed prior to Public Act 94—329. However, the *Maldonado* court held that Public Act 94—693 did not exhibit a legislative intent to invalidate subsection (d)(1)(H). We agree.

Most importantly, Public Act 94—963 affected a different and distinct portion of section 11—501. That is, its objective was to amend the statute to expand the purposes for which DUI fines and fees could be used. See Pub. Act 94—963, eff. June 28, 2006. It had no relevance to subsection (d)(1)(H)'s criminalizing the lack of insurance, or to subsection (d)(1)(F)'s new penalty provisions, for that matter. Thus, since the enactments affected different provisions of the statute, they were not inconsistent and could be given effect. See *Maldonado*, 386 Ill. App. 3d at 975 ("[b]ecause the changes made by Public Act 94—329, Public Act 94—609, and Public Act 94—963 are not inconsistent, all three acts must be construed to give full effect to each act"). Next, as the *Maldonado* court noted, a reading of Public Act 94—963 shows that "the Public Act 94—329 version of section 11—501 of the Vehicle Code is set forth, in its entirety, in Public Act 94—963" and, thus, it does not conflict with, but incorporates, Public Act 94—329's amendments. *Maldonado*, 386 Ill. App. 3d at 975 ("[t]hus, Public Act 94—963 does not conflict with, but incorporates, the amendments contained in Public Act 94—329"). Moreover, after examining the language and those portions of section 11—501 repeated by Public Act

94—963, the *Maldonado* court came to the conclusion that the legislature's intent behind this newer amendment was not to repeal the changes made by Public Act 94—329 but, rather, to reinforce them. See *Maldonado*, 386 Ill. App. 3d at 976 ("Public Act 94—329 was *** an intermediate act and remained in force despite the later passage of" Public Act 94—963).

All these factors, combined with the legislature's failure to physically cross out the new language of subsection (d)(1)(H) and the history outlined by the *Maldonado* court regarding each of the three public acts (see *Maldonado*, 386 Ill. App. 3d at 977-78), certify our conclusion that neither the legislative discussions nor the passage of Public Act 94—963 showed any intent, as defendant here claims, to invalidate subsection (d)(1)(H).[1]

## C. *Rule of Lenity*

■ Defendant's final argument regarding his contention that his conviction must be reversed due to the ineffectiveness of subsection (d)(1)(H) is that the rule of lenity should be applied in his favor. He asserts that, upon a determination that Public Act 94—609 did not supersede Public Act 94—329, the remaining public acts, in conjunction with these amendments, "created fundamental ambiguities" in section 11—501 requiring us to reverse his conviction. Once again, we disagree.

Defendant is correct that, when construing criminal statutes, the rule of lenity requires that any ambiguity must be resolved in a manner favoring the accused. See *People v. Jones*, 223 Ill. 2d 569, 581 (2006). However, when the legislature clearly intends the application of a criminal statute, the rule of lenity does not apply and does not excuse the enforcement of that statute. See *People v. Hicks*, 164 Ill. 2d 218, 222 (1995).

Turning for a final time to *Maldonado*, wherein its defendants also argued for the application of the rule of lenity regarding their section 11—501 convictions, we find that court's reasoning most exemplary. We have already determined that the legislature clearly

---

[1]We note for the record that defendant in the instant case, again as defendants in *Maldonado*, also briefly argues that "there are numerous irreconcilable conflicts among all" the amendments made to section 11—501, as found in Public Acts 94—110, 94—113, 94—114 and 94—116, in addition to Public Acts 94—329, 94—609 and 94—963. In a concise explanation, the *Maldonado* court found that this allegation could not stand since "these previous acts *** made separate and distinct changes to the Vehicle Code" which were in no way inconsistent with Public Act 94—329. *Maldonado*, 386 Ill. App. 3d at 980. We adopt this same reasoning here in relation to defendant's claim.

intended to make a violation of driving without insurance part of the overall offense of aggravated DUI when it passed Public Act 94—329. See, *e.g.*, *Maldonado*, 386 Ill. App. 3d at 980. We have also determined that the legislature clearly did not intend for either Public Act 94— 609 or 94—963 to repeal or supersede that amendment, which was embodied in subsection (d)(1)(H). See *Maldonado*, 386 Ill. App. 3d at 980. "Accordingly, because the legislative intent here is clear, there is no justification for applying the rule of lenity." *Maldonado*, 386 Ill. App. 3d at 980, citing *Hicks*, 164 Ill. 2d at 222.

## II. Admission of Defendant's Statement

■ Defendant's second, and final, contention on appeal is that, even were we to uphold the validity of the statute in question, his conviction must be reversed and remanded because the trial court committed serious error by allowing into evidence his alleged oral admission to driving the car involved in the collision. Defendant asserts that the State did not tender this statement to defense counsel during discovery as it was required to do and, because the only disputed element of the cause was whether defendant was driving, this created surprise and undue prejudice which denied him a fair trial.

During his testimony, Officer Monsalvo stated that, upon arriving at the scene and observing defendant standing on the sidewalk yelling at Gross, he approached defendant and began asking him about his involvement in the accident. When Officer Monsalvo testified that defendant told him he was driving the Mazda, defendant objected; the court overruled this objection. Officer Monsalvo further testified that defendant told him he did not have insurance. Following this testimony, defendant moved to suppress Officer Monsalvo's statement that defendant admitted he was driving, but the trial court denied this, as well as defendant's subsequent motion to strike and posttrial motion to reconsider, ultimately concluding that, although the statement was not memorialized "as well as it might have been," it was implicit in the statements tendered to defendant during discovery and the circumstances surrounding its making provided "enough notice" to him so as not to have created surprise or prejudice at trial.

Illinois Supreme Court Rule 412(a)(ii) imposes upon the State the duty to disclose to defendant prior to trial as part of discovery "any written or recorded statements and the substance of any oral statements made by the accused ***, and a list of witnesses to the making and acknowledgment of such statements." 188 Ill. 2d R. 412(a)(ii). This duty is mandatory and ongoing throughout the trial process. See *People v. Bobo*, 375 Ill. App. 3d 966, 974 (2007). If the State fails to

comply, the trial court may order a variety of sanctions, including discovery of the previously undisclosed statement, a continuance, the exclusion of the evidence *in toto*, or some other remedy it sees fit. See *Bobo*, 375 Ill. App. 3d at 974, citing 134 Ill. 2d R. 415(g). What sanction is imposed depends on the circumstances presented in each individual cause and should retain the objective of accomplishing proper discovery and not the punishment of the State. See *Bobo*, 375 Ill. App. 3d at 974; see also *People v. Walton*, 376 Ill. App. 3d 149, 157 (2007); *People v. Nettnin*, 216 Ill. App. 3d 794, 799 (1991) ("failure to comply with discovery requirements does not, in all instances, necessitate a new trial [citation], and each case must be examined to determine whether the State's failure resulted in harmless error [citation]"). "The sanction of excluding certain evidence is appropriate only in the most extreme situations and is disfavored." *Walton*, 376 Ill. App. 3d at 157.

Factors to consider in determining whether a new trial is warranted due to a violation of Rule 412(a)(ii) are the closeness of the evidence presented, the strength of the undisclosed evidence, the likelihood that prior notice would have helped the defendant to discredit the evidence, and the willfulness of the State in failing to disclose the evidence during discovery. See *Nettnin*, 216 Ill. App. 3d at 799. Ultimately, the determination as to whether to impose a discovery sanction for a violation of Rule 412(a)(ii) and what that sanction should be lies within the trial court's sound discretion and will not be disturbed absent an abuse of that discretion. See *Walton*, 376 Ill. App. 3d at 157-58; accord *Bobo*, 375 Ill. App. 3d at 974 ("trial court's choice of sanction is given great deference and will only be disturbed by a showing of abuse of discretion").

Based on our review of the record in the instant cause and, in particular, of the circumstances surrounding the statement at issue, we find that the trial court did not abuse its discretion in denying defendant's motions to exclude Officer Monsalvo's testimony regarding defendant's admission that he was driving.

Prior to trial, the State disclosed to defendant that conversations were had between him and the officers involved in this cause, as well as the following statements: defendant was approached at the scene regarding his involvement in a traffic accident and defendant stated he did not have insurance. The State also disclosed that the witnesses to these statements were Officer Monsalvo and his partner, Officer Jones. Therefore, defendant knew that these statements could be brought out at trial and knew, as well, from which witnesses they would be elicited.

As the trial court found, and reiterated on the numerous occasions it dealt with defendant's motions to exclude and suppress, there was no inherent surprise or prejudice resulting from Officer Monsalvo's testimony that defendant admitted to him he was driving. To the contrary of such an assertion, we find the court's conclusion that this admission was inherent in the statements the State disclosed to defendant before trial to be quite reasoned and appropriate. The evidence shows that Officer Monsalvo immediately approached defendant upon his arrival at the scene of the collision and asked him about his involvement in an effort to gather information. Again, the State had disclosed this during discovery and, thus, defendant knew he had such conversations with police. This led to more information, with defendant telling Officer Monsalvo that he was driving the Mazda and, then, that he had no insurance. Clearly, defendant's statement about insurance was in reference to Officer Monsalvo's inquiries made to him at the scene about how he was involved—*i.e.*, that, pursuant to his own admission, he had been driving. In accordance with the trial court, we too find the facts that the admission was made at the scene, that defendant was talking to Officer Monsalvo at the time specifically about his involvement in the accident, and that the State disclosed his statement that he had no insurance on the Mazda all combined to give enough notice to defendant that his admission that he was driving would be introduced at trial.

Obviously, as the trial court itself noted, defendant's admission was perhaps not documented as well as it might have been. However, as we have pointed out above, and as exemplified by several cases before our reviewing courts, substantial and not perfect compliance with Rule 412(a) is enough to adequately apprise the defendant of the statement in question so as to defeat a claim of surprise or prejudice. In fact, we have held that this is particularly true where, as here, the defendant had access to the statement or when the substance of the statement is contained in a police report that has been provided to him before trial pursuant to discovery. See *People v. Burgos*, 243 Ill. App. 3d 993, 1004 (1993) (in such cases, "[t]echnical compliance with [Rule 412] may be excused," as "the purpose of the rule has been satisfied"); accord *People v. Brandon*, 283 Ill. App. 3d 358, 363 (1996); *People v. Miller*, 190 Ill. App. 3d 981, 991 (1989). Ultimately, "[t]he State is not required to make a transcript or memorandum of the defendant's oral statement" but, rather, is only required to disclose the *substance* of the statement. *Brandon*, 283 Ill. App. 3d 358, 363 (1996). See, *e.g.*, *Brandon*, 283 Ill. App. 3d at 363-64 ("marginally sufficient compliance" with Rule 412 by State provided enough notice that the defendant's statement regarding threat of force would be

introduced at trial, where State had tendered police report summarizing interview with witness who told police about the defendant's statement made to victim; though there could have been better method, this statement was "furnished to [the] defendant prior to trial and made him aware of the substance" and, therefore, "no Rule 412 discovery violation was committed"); *Burgos*, 243 Ill. App. 3d at 1004 (the defendant's contention that new trial was warranted where State failed to disclose his oral statement that he was gang member could not stand where "one could fairly conclude" from language in disclosed police report describing his gang tattoos that the defendant could anticipate questions concerning this admission); *Miller*, 190 Ill. App. 3d at 990-91 (finding the defendant's discovery violation argument to be without merit where record showed State revealed substance of oral statements made by the defendant and his codefendants, and that oral statement of codefendant that defendant planned robbery was implicit therein, thereby providing enough notice to him to defeat claim of surprise or prejudice).

Just as in *Burgos, Brandon* and *Miller*, we hold that, while perhaps there could have been a better memorial of defendant's admission that he was driving, the State's discovery disclosure to defendant that he was approached by Officer Monsalvo regarding his involvement in the accident and that he stated he did not have insurance was sufficient to provide him with notice that his admission of driving would be brought forth at trial and, thus, no Rule 412 violation occurred.

Even were we to have found that the State had committed such a violation, a review of the applicable factors we have outlined above demonstrates that the trial court's decision to allow defendant's oral admission amounted to harmless error and would in no way have warranted reversal of his conviction, remand or a new trial. First, even placing defendant's admission that he was driving to the side, the evidence in the instant cause was not close. Defendant was present at the scene of the accident, yelling obscenities at the victim, Gross. The parties stipulated that defendant was quite drunk, having tested at a .262 breath alcohol level. Gross testified that the man who approached officers immediately upon their arrival at the scene told them his name was Pierre, that he had been driving the Mazda, and that he could not produce either his driver's license or any proof of insurance. Moreover, Officer Monsalvo testified that defendant was the only other person besides Gross at the scene of the accident when he arrived and that it was defendant to whom he gave the field sobriety tests, which he failed. In addition, the State presented a certified copy of a vehicle abstract, as well as a certified title and registration, for the 1993 Mazda indicating that the vehicle belonged to defendant. Defendant did not refute any of this evidence.

Next, we do not find that defendant's oral admission about driving was sufficiently strong to have an effect on the weight of the evidence against him. There was abundant other competent and undisputed evidence satisfying the elements of the crime of which defendant was convicted. Again, Gross' and Officer Monsalvo's testimony, along with the Breathalyzer test results and the documentary evidence regarding the Mazda, are solid examples of this. And again, defendant presented no evidence to dispute any of this.

Third, there is no indication that prior notice of defendant's admission that he was driving would have helped him to discredit the evidence. Particularly, defendant cross-examined Officer Monsalvo regarding this statement after the trial court denied his objection and was able to bring forth before the court the fact that Officer Monsalvo failed to record the statement in any report. Accordingly, defendant had ample opportunity to explain the statement or discredit the circumstances around it, as well as Officer Monsalvo's credibility. Since his defense, *i.e.*, that he was not the driver, never changed even after Officer Monsalvo's testimony, we find it hard to believe prior notice would have changed his tactics.

Finally, we find nothing in the record to demonstrate that the State willfully failed to disclose the statement to defendant during discovery. The State brought out the admission before the trial court early during trial and during its direct examination of Officer Monsalvo, its first witness. It was not as if the State waited to present this evidence for the first time until rebuttal or closing argument, when defendant had no opportunity to dispute it. Nor was this a jury trial but, rather, a bench trial. See *People v. Brown*, 185 Ill. 2d 229, 247 (1998) (trial judge in bench trial is presumed to know law and consider only competent evidence). Moreover, defendant received a two-week continuance after the statement was presented and, thus, had the chance to investigate it as well as its maker, Officer Monsalvo.

Therefore, after reviewing all these factors, we find that, even if an error were committed here in allowing defendant's oral admission that he was driving, it would have been harmless and would not merit the relief defendant seeks on appeal. See, *e.g.*, *Nettnin*, 216 Ill. App. 3d at 799-800 (examining the four factors used to determine if new trial is warranted in Rule 412 violation claim and concluding that, if any error was present, it was harmless).[2]

---

[2]In this regard, we note that defendant's reliance on *People v. Boucher*, 62 Ill. App. 3d 436 (1978), and *People v. Shegog*, 37 Ill. App. 3d 615 (1976), is misplaced as their facts are not at all similar to those presented before us. The

## CONCLUSION

We conclude that there is no support for either of defendant's contentions on appeal; section 11—501(d)(1)(H) was valid and in full effect when he was charged with aggravated DUI for driving drunk while knowing the vehicle was not covered by insurance, and any error by the trial court in allowing his oral admission to police that he was driving did not warrant reversal and remand of his conviction.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'MARA FROSSARD and TOOMIN, JJ., concur.

defendant in *Boucher* challenged the admission of an undisclosed statement and prevailed, but this was because the State waited to present it until rebuttal testimony at trial when the defendant could not counter it, the State referred to it frequently during closing argument, and the remaining evidence was close. See *Boucher*, 62 Ill. App. 3d at 440-42. In *Shegog*, the defendant prevailed on his discovery violation claim after he testified on his own behalf regarding the undisclosed statement, he presented evidence to dispute the State's case, and again, the evidence was otherwise close. See *Shegog*, 37 Ill. App. 3d at 618-19. Clearly, as we have just described, the instant cause completely differs from either of these.